NELLIE STEPHON v. JOHN TOPIC AND OTHERS.
FRANK STEPHON, APPELLANT.[1]

December 3, 1920.

No. 21,987.

**Setting aside conveyance fraudulent as to grantor's wife.**

1. The evidence supports the finding that certain conveyances were made, with the fraudulent purpose of depriving plaintiff of the right to secure support for herself and children by resorting to the land conveyed.

**Trust void as to creditors of grantor — proceeds of sale of trust property.**

2. Section 7010, G. S. 1913, applies to realty as well as personalty. The grantee in a deed to which the statute relates, by accepting the deed, becomes a trustee for the grantor's creditors. If he sells the land the trust attaches to the proceeds of the sale.

**Deserted wife of grantor a creditor.**

3. The deserted wife of a grantor who executes a deed falling within the definition of the statute may be entitled to assert all the rights of a creditor.

**Uncontradicted testimony not necessarily to be believed.**

4. The refusal of the trial court to credit the testimony of the defendants was not arbitrary or without justification within the rule stated in Olsson v. Midland Ins. Co. 138 Minn. 424.

**Conspiracy to defraud grantor's creditors — liability of grantee.**

5. Where the grantor and grantee in a deed conspire to commit a fraud on the grantor's creditors, the grantee is answerable to the creditors for the proceeds of the sale of the property without deduction for the grantor's indebtedness to him and without reimbursement or indemnity.

**Statute of limitations — estoppel.**

6. The statute of limitations is not a bar to the action and plaintiff was not estopped from maintaining it.

Action in the district court for Rice county to require defendants to disclose how much of the proceeds of a sale of certain real estate they still have in their possession; to apply the money on plaintiff's judg-

[1]Reported in 180 N. W. 221.

ment; to recover $12,031.45 and in case no portion of the proceeds of the real estate were in their possession for an accounting. The facts are stated in the opinion. The case was tried before Childress, J., who made findings and ordered judgment in favor of plaintiff for $7,660. The motion of defendant Frank Stephon to amend the findings and order for judgment was denied. From an order denying his motion for a new trial, defendant Frank Stephon appealed. Affirmed.

*William W. Pye, George T. Simpson* and *John F. Dahl,* for appellant.

*Moonan & Moonan,* for respondent.

LEES, C.

Plaintiff was the wife of the defendant Albert Stephon and the mother of his five children. Prior to the year 1909 they had become estranged and were living apart from each other. Plaintiff owned 80 acres of land on which she lived with the children, whom she was supporting with some aid from her husband. He owned 120 acres of land adjoining, which had been conveyed to him by his father and was encumbered by mortgages. At his request, plaintiff joined with him in a deed of his land to the defendant Topic, executed in December, 1909. Topic paid nothing for the land, but plaintiff received $1,200 from her husband for signing the deed. She had signed a note as surety for him upon which a judgment of approximately $700 had been recovered against her. Her husband had brought a divorce action against her, in which he had failed. Her expenses in defending the action were approximately $500. The $1,200 she received was used to pay the judgment and the expenses of the divorce action. In February, 1910, Topic conveyed part of the land to one Frejlach, who paid $4,000 for it. The money was paid to Albert. On the same day Topic conveyed the remainder of the land—80 acres—to one Simon, who gave his note for $3,000, payable to Albert, as the consideration for the deed. The note was not delivered but left in the hands of a third party. In September, 1910, Simon conveyed the eighty to the defendant Frank Stephon, who is Albert's father. The deed recited a consideration of $7,500. Nothing was in fact paid, but Frank executed his note to a bank for $5,000 and gave Simon his check for that amount. Simon immediately delivered

the check to Frank's son-in-law, who later handed it back to Frank. At the same time Simon's note to Albert was returned to Simon. In December, 1910, Frank conveyed the eighty to one Kral, who paid $7,660 for it.

Frank knew that Albert and his wife were having trouble and had separated, and knew of the divorce action. In 1910 Albert went to Colorado, where he brought a second action for divorce. Plaintiff appeared and contested it and it was dismissed. Later on he brought a third action which resulted in his obtaining a decree. In 1917 he remarried and returned to this state.

After he went to Colorado, plaintiff supported herself and the children without assistance from him. On his return to this state she brought an action against him founded on his legal obligation to support her and the children and obtained a default judgment against him in June, 1917, for something over $12,000. An execution was returned unsatisfied, and she then brought this action to subject the money received by Frank on the sale of the eighty to the payment of her judgment.

The court found that the deed to Topic, and from him to Simon, and from Simon to Frank, were all made with the fraudulent purpose, on the part of Albert and Frank, of depriving plaintiff of the right to secure support for herself and the children by a resort to the land conveyed, and that Frank had received $7,660 from Kral and retained and had it in his possession at the time of the commencement of this action. Plaintiff was awarded judgment against him for that amount with interest. He moved for a new trial and appeals from the order denying the motion.

1. His first contention is that there is no evidence to support a finding that there was fraud in the several transactions detailed. Plaintiff testified that when the deed to Topic was made she believed he was actually buying the land; that she signed the deed in consideration of the $1,200 payment and her husband's promise to furnish her and the children with better support in the future. Albert denied making any such promise.

One of the firm of real estate brokers who made the sale of the eighty to Kral testified that Frank told him when the sale was made that the land belonged to Albert; that he was holding it for him, but was afraid

there was going to be trouble; that he had given Albert what he had but got it back so nothing was Albert's. Frank testified as follows:

"Q. And then Albert got out West and got to wiring you for money and you sent it to him?

"A. I had it. It was his money.

"Q. Because he got into trouble out there?

"A. I had to. It was his money."

In our opinion the evidence justified the court in finding that Albert and Frank were acting in concert in the various transactions to which we have referred. It is evident that Albert wanted to divorce his wife and avoid his duty to support her and his children. Frank went to his aid by taking the title to the land and holding it for him. The transactions to which they were parties appear to have been in furtherance of a scheme devised and actively participated in by both, by which they sought to defeat plaintiff's rights. The court was justified in finding that both were concerned in a fraudulent attempt to prevent her from collecting her claim for support.

2. The law applicable to the facts disclosed by the findings is reasonably well settled. G. S. 1913, § 7010, reads:

"Every deed of gift, every conveyance, and every transfer or assignment, verbal or written, of goods, chattels, or things in action, made in trust for the use of the person making the same, shall be void as against the creditors, existing or subsequent, of such person." Though limited by its terms to personalty, the statute rests upon the common law principle that a man's property is subject to the payment of his debts, although he has vested a nominal title to it in another, and it is, therefore, held to apply to realty as well as personalty. Wetherill v. Canney, 62 Minn. 341, 64 N. W. 818; Anderson v. Lindberg, 64 Minn. 476, 67 N. W. 538; Bump, Fraud. Conv. § 191. Notwithstanding the several transfers of the land, it continued to be Albert's property until it was sold to Kral. Frank Stephon's liability is direct and not remote or contingent. It rests upon the principle that in equity, by accepting the deed from Simon, he became a trustee for Albert's creditors. He took the title to the land charged with a trust in favor of the creditors, and when he sold the land the trust attached to the proceeds of the sale. North & Carll v. Bradway, 9 Minn. 169 (183); Chamberlain

v. O'Brien, 46 Minn. 80, 48 N. W. 447; Murtha v. Curley, 90 N. Y. 372; Mason v. Pierron, 69 Wis. 585, 34 N. W. 921; Bump, Fraud. Conv. § 217; 20 Cyc. 630; Wait, Fraud. Conv. § 385. Plaintiff is entitled to assert all the rights of a creditor. Byrnes v. Volz, 53 Minn. 110, 54 N. W. 942; Baier v. Baier, 91 Minn. 165, 97 N. W. 671; Jacobs v. Jacobs, 136 Minn. 190, 161 N. W. 525, L.R.A. 1917D, 971; Robertson v. Robertson, 138 Minn. 290, 164 N. W. 980.

3. The court found that Frank retained the entire consideration for the deed to Kral. This finding is not directly questioned by the assignments of error, but we have concluded to treat them as sufficient to raise the question of whether there is evidence to support it. Both Frank and Albert testified that all the money was paid to Albert prior to 1917 except $2,500 which Albert owed his father. There is no direct evidence to the contrary. The general rule relating to the effect to be given to uncontradicted testimony, unimpeached and not improbable, received careful consideration in Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474. The refusal of the trial court to credit the testimony of the Stephons on this subject was not arbitrary or without justification. There must have been some record at the local banks where Frank claims to have obtained the drafts he sent to Albert which could readily have been produced to corroborate his testimony. Both Albert and Frank were vitally interested in the outcome of the case. The trial court had the advantage of hearing their testimony and observing their demeanor in giving it. We ought not to be too ready to disregard a conclusion reached by the trial judge respecting the credibility of a witness.

It is unnecessary, however, to rest the decision of this phase of the case solely upon the proposition that the two Stephons did not tell the truth. It is settled law that where a grantor and grantee conspire to commit a fraud upon the grantor's creditors, the grantee is answerable to the creditors for the proceeds of the sale of the property without deduction for the grantor's indebtedness to him and without reimbursement or indemnity. Byrnes v. Volz, supra; Thompson v. Bickford, 19 Minn. 1 (17); Leqve v. Stoppel, 64 Minn. 74, 66 N. W. 208. The reason is that if the grantee partakes of the fraud with the grantor, he is entitled to no consideration in a court of equity. Being a party to a positive fraud, he has no right to invoke the protection of the law

when called to account by a creditor whom he sought to aid the debtor in defrauding. So long as the finding stands that Albert and Frank united in a common purpose to defraud plaintiff out of her right to resort to the land in enforcing performance by Albert of his duty to support his family, Frank cannot be heard to say that he has paid Albert for the land or that Albert owed him and he had the right to discharge the debt out of the proceeds of the sale of the land. No one should be permitted to join in a conspiracy to cheat another and escape responsibility. There is no respectable authority to support the proposition that a particeps criminis in a case of positive fraud will be afforded reimbursement or indemnity by a court of equity. The current of authority is all to the contrary. The law is stated and the cases collected in Bump, Fraud. Conv. § 628; Wait, Fraud. Conv. § 192; 12 R. C. L. 640; 3 Pomeroy, Eq. Jur. § 1057; 20 Cyc. 638, and 14 Am. & Eng. Enc. (2d ed.) 344, 345.

4. Appellant relies on the statute of limitations as a bar to the action, citing Duxbury v. Boice, 70 Minn. 113, 72 N. W. 838, and Brasie v. Minneapolis Brewing Co. 87 Minn. 456, 92 N. W. 340, 67 L.R.A. 865, 94 Am. St. 709. For a number of reasons this point is not well taken. In the first place, the court finds that plaintiff had no knowledge of the fraud until after July 14, 1911. This action was commenced July 14, 1917, less than six years after plaintiff discovered the fraud. There was sufficient evidence to sustain this finding. Furthermore, the judgment for support, which is the basis of the present action, was not recovered until 1917. Prior to its recovery, plaintiff's present cause of action did not accrue. Rounds v. Green, 29 Minn. 139, 12 N. W. 454; Young v. Buck, 97 Kan. 195, 154 Pac. 1010; Ainsworth v. Roubal, 74 Neb. 723, 105 N. W. 248, 2 L.R.A.(N.S.) 988; Bump, Fraud. Conv. §§ 572, 573. And finally, Frank still has the money received from Kral. The money belongs to Albert. The purpose of this action is to reach funds belonging to Albert but in the possession of Frank as trustee and subject such funds to the payment of the judgment against Albert. It is difficult to see how the application of the statute is involved upon such a state of facts.

5. Appellant is not in a position to invoke the doctrine of estoppel, for, according to the findings, he has been an active participant in the

attempt to defraud plaintiff. Equity will not allow him to protect himself from the consequences of his wrongful acts because plaintiff did not sooner assert her rights against him.

The order appealed from is affirmed.