CITIZENS STATE BANK OF ST. PAUL v. CYRUS WADE.
CYRUS WADE AND ANOTHER v. CITIZENS STATE BANK
OF ST. PAUL AND ANOTHER.
CITIZENS STATE BANK OF ST. PAUL AND ANOTHER v.
CYRUS WADE AND ANOTHER.[1]

December 31, 1925.

Nos. 24,952, 24,938.

**When order granting new trial is appealable.**

1. An order granting a new trial is not appealable, unless the court states expressly that it is granted exclusively for errors of law.

**Verdict of usury sustained.**

2. The evidence sustains the verdict finding a loan usurious, and that it was exacted by the bank.

**Constructive trust for benefit of the Wades when bank fraudulently acquired title by deed from vendor.**

3. The findings are supported that the bank fraudulently secured a deed from the vendor to a farm, the contract for the purchase of which had been assigned to it by the vendee as collateral security for the usurious loan; that, in order to deprive the vendee of the farm, the bank fraudulently obtained the rights of the purchaser at a foreclosure sale of the mortgage it gave the vendor when the deed was received; and that, with a like purpose, it made a redemption from a mechanic's lien foreclosure sale of part of the farm. Such findings justify the conclusion that a constructive trust arose in respect to the farm by which the title acquired by the bank enured to the benefit of the Wades.

**How far stipulation at trial is binding on parties.**

4. A stipulation made during the trial of a case is to be construed as covering the situation then existing and not as controlling future conditions not in contemplation.

[1]Reported in 206 N. W. 728.

**Trustee of constructive trust entitled to be paid for lawful disbursements.**

    5. The trustee of a constructive trust is entitled to reimbursement for what has been lawfully paid in securing and protecting the estate for the beneficiary, and the conclusion of law that the bank is entitled to a lien for the items specified is sustained.

**Rulings on evidence.**

    6. No error occurred in the rulings at the trial.

    Appeal and Error, 3 C. J. p. 507 n. 61; 4 C. J. p. 1012 n. 16.
    Cancellation of Instruments, 9 C. J. p. 1219 n. 18.
    Equity 21 C. J. pp. 172 n. 13, 180 n. 87.
    Evidence, 22 C. J. p. 485 n. 82.
    Stipulations, 36 Cyc. p. 1293 n. 70 New.
    Trusts, 39 Cyc. pp. 172 n. 32; 177 n. 40.
    Usury, 39 Cyc. pp. 1011 n. 66; 1054 n. 71.
    Witnesses, 40 Cyc. pp. 2435 n. 80; 2472 n. 13.

Three actions in the district court for Wright county, the first in ejectment tried before Giddings, J., who ordered a new trial after directing a verdict for plaintiff; the second case to determine title to land involved in ejectment suit and the third in replevin for personal property claimed under chattel mortgage. The second and third cases were consolidated and tried before Tifft, J., who found the Wades were owners of the land subject to the lien of the bank for certain advances and that the chattel mortgage was void.

The bank appealed from the order in the first case and from the judgments in the other cases and the Wades took a cross appeal in the land suit. Appeal in first action dismissed and judgments in second and third actions affirmed.

*Hubert Harvey, George Nordlin* and *Ralph Stacker,* for the appellant bank.

*Thomas C. Daggett* and *Maurice V. Pew,* for Cyrus and Dora Wade.

HOLT, J.

The appeal concerns three actions. One is the Citizens State Bank of St. Paul v. Cyrus Wade, in ejectment, tried by Hon. A. E. Giddings, where a verdict was directed for plaintiff, but, on de-

fendant's motion, the verdict was vacated and a new trial granted. The bank appeals from the order. The other appeal is from the judgments rendered in two actions consolidated and tried together by Hon. C. M. Tifft, sitting in place of Judge Giddings, the one action being by Cyrus and Dora Wade against the Citizens State Bank of St. Paul, affecting the title to the same land involved in the ejectment suit, and the other being by the bank against the Wades for the replevin of personal property covered by a chattel mortgage; the appeal from each judgment being by the bank, and a cross appeal by the Wades in the land suit.

### Dismissal of Appeal in Action in Ejectment.

The appeal in the first mentioned case must be dismissed. It is taken from an order granting a new trial on a motion specifying, among other grounds, that the verdict was contrary to the evidence. In the order there is no statement that it was granted exclusively for errors of law. A memorandum subjoined to the order reads: "A new trial is granted in this action upon the authority of Trust Company v. Dokko, 72 Minn. 229, the principles announced in the cases therein cited and approved by our Supreme Court. I regret that my attention was not called to this at the trial." This is not stating expressly that a new trial was granted exclusively for errors of law, and hence the order is not appealable. Our latest ruling upon this point, Miller v. County of Steele, 162 Minn. 85, 202 N. W. 68, requires a dismissal of the appeal from the order.

### Actions to Cancel Deed and Chattel Mortgage Because of Bank's Fraud.

An outline of the controversy litigated in the two actions wherein the appeal is from the judgments may be stated thus: Cyrus Wade had a contract with one Jester for the purchase of a 120-acre farm near Annandale, Wright county, whereon a large payment was due on July 10, 1920. He was a patron of the bank and a friend of Daniel D. Clark, the president. He went to the bank to secure a

loan to meet the payment. In addition to what he could raise, Wade needed $3,896.36 to satisfy the amount then due Jester. Clark came to the farm where the Wades were living and arranged for the loan. Wade and his wife executed three promissory notes for $1,500 each, bearing 8 per cent interest, and turned over $1,000 in Liberty bonds, then of the agreed value of $850, and Clark gave a check of a corporation controlled by him for $4,746.36. As collateral security to the notes the contract with Jester for the purchase of the farm was assigned, and a chattel mortgage executed upon livestock, farm machinery, and the household goods on the farm. The Wades signed a blank paper, upon which the assignment of the contract was to be written in afterwards, and a chattel mortgage blank with the property not inserted. As to the assignment no question is made of the authority of Clark to fill in a description of the Jester contract above the signatures, but as to the mortgage the claim is that the household goods and other items were inserted without authority.

In January, 1921, the transaction with Jester was to have been closed by paying him the balance of the purchase price above a $9,000 mortgage which was to be given Jester upon delivery of his deed, subject to a $6,000 mortgage which the vendee was to assume. The Wades had not met that payment, and evidently Jester had begun proceedings to terminate the contract by statutory notice when, in April, Mr. Wade again went to the bank and interviewed Clark for another loan, which Wade claims was then promised. He then saw Jester and, by giving a check of $750 on the bank, the notice to cancel was withdrawn and the settlement postponed until the last part of May, 1921. Clark was advised of what had been done, and caused the $750 to be paid, although Wade had no funds to his account. When, however, the time approached for the final settlement with Jester, Clark, on May 27, 1921, advised Wade that the bank would make no further loan, and proposed that Wades deed their interest, and be given a credit of $5,000 on account of their indebtedness to the bank. This was declined, but Clark requested Wade, so the latter testified, to call him up at 3 o'clock that

afternoon. When Wade called up at the hour set, Clark was not there. He had gone to Buffalo where, by appointment, he was met by McDonald, a banker of Annandale, the agent of Jester. Clark demanded the deed of McDonald to be made to Hanson, the cashier of the Citizens State Bank of St. Paul, exhibited the assignment from Wade and wife, tendered a mortgage of $9,000 made by Hanson to Jester, stating to McDonald that the Wades were out of it. Hanson's name was used for the bank's benefit, he having no personal interest in the transaction.

Immediately upon ascertaining what had been done, Wade caused a notice of lis pendens to be filed and commenced this action against the bank, claiming the loan usurious and alleging fraud in obtaining the deed in Hanson's name and asking for equitable relief in the way of cancelation of the notes and the instruments securing the same. The bank also began a replevin action for the property covered by the chattel mortgage, to which the Wades answered, making the same usury charge and also alleging the fraudulent insertion in the mortgage of property which the Wades had not agreed to give as security. In addition to a denial of the usury and fraud, the bank, by a supplemental answer, asserted title to the farm in virtue of the foreclosure of the Jester mortgage, having acquired a deed from the purchaser at the sale after the time of redemption expired, and also title to lot 2, a part of the farm, in virtue of a redemption as a mortgagee from the foreclosure sale of a mechanic's lien. It appears that after the mortgage was given to Jester no interest was paid, and the foreclosure resulted. Two issues were submitted to a jury, with the acquiescence of all parties, viz: (a) Whether the loan secured by the assignment of the land contract and the chattel mortgage was usurious; and (b) whether items not authorized were inserted in the chattel mortgage. Both questions were answered in the affirmative, and thereafter findings were made upon which the judgments appealed from were entered. There were motions for amended findings or new trials, so that there are nearly 60 pages of errors assigned in the brief for the bank. Only those going to the merits of the controversy will be touched in this opinion.

The foundation of the judgments in favor of the Wades is the finding of usury. It has been passed on by two juries, there having been a prior trial with the same verdict. The trial judge adopted and approved the verdict. We have examined the evidence with care and must hold that the verdict is sustained. The controversy as to the loan centered upon how the Liberty bonds were received. Wade claimed they were received as $850 cash with the three promissory notes for $4,500, for which was received $4,746.36 applied on the Jester contract, so that deducting the amount of the Liberty bonds, as appraised, from the $4,746.36 check obtained, Wades received only $3,896.36 for the $4,500 notes, leaving $603.64 bonus exacted for the loan in addition to the 8 per cent interest called for in the notes. Clark's version is that the Liberty bonds were taken at first to apply in part upon the payment of a personal debt due Clark, in the expectation that the bank would accept the loan with the other collateral; but that, when the discount committee refused, Wade agreed that the $1,000 Liberty bonds with $1,400 of such bonds of Clark's should be placed as collateral for the loan of $4,746.36 evidenced by the three promissory notes secured by the chattel mortgage and the Jester contract, and thus the loan was accepted by the bank. We need not set out any more of the conflicting evidence. It is enough to say that we cannot say that the usury is not amply proven. It is claimed the loan was not by the bank, that it did not reap the benefit of the usury, for, if any there was, it went to Clark. On this record it cannot well be contended that the loan was not the bank's. The managing officers of the bank, both with reference to the loan and the subsequent effort to divest the Wades of all interest in the properties securing the loan, seem to have acted for the bank. The promissory notes and the chattel mortgage were taken in the name of the bank. It replevined the personal property covered by the mortgage. The question whether the verdict of the jury as to the unauthorized insertion of items in the chattel mortgage is sustained, need not be considered in view of the conclusion that the usury was established, for that alone voids the mortgage. This was a small bank. The president, Clark, was in charge and at all times owned the majority of the

stock. He alone acted for the bank in all the dealings with Wade. We think that State Bank of Morton v. Adams, 142 Minn. 63, 170 N. W. 925, and Engen v. Merchants & Mnfg. State Bank, 164 Minn. 293, 204 N. W. 963, answer all contentions of the bank as to its not being bound by Clark's doings.

The important legal question grows out of the bearing on subsequent events of this stipulation made at the first trial of the action on January 12, 1921, before any interest was due or default made in the Jester mortgage: "At this time it is stipulated in open court by and between the parties hereto that no matter what the determination and judgment of the court may be as to the ownership of the Wright County land described in the pleadings herein, that the mortgage executed and given to R. N. Jester on and against said Wright County land be and stand as a valid lien on and against said Wright County land."

As we understand the bank's position it is this: That the Wades, having made that stipulation, assured the parties to the suit that the mortgage was valid, hence they cannot now question the title and right acquired through its foreclosure. When that stipulation was made, it was not contemplated that the Jester mortgage was to be foreclosed, nor that the litigation would drag until there was a foreclosure, nor that the bank would proceed as it since has done to secure the land. It was made for the purposes of that trial and the conditions then existing. Jester was then owner of the mortgage, and one purpose may have been to avoid the expense of his intervening in the suit.

The charge was made, and the court found, that the bank had agreed to make a loan to Wade so as to enable him to close the deal with Jester, and afterwards broke it and fraudulently secured for itself the deed from him and executed back the mortgage using its cashier Hanson as the conduit. No matter what claim there may be in denial of the bank's participation in the usury, there is really no dispute of the fact that every step in obtaining the deed from Jester, in securing the sheriff's certificate of sale on the mortgage foreclosure, and redeeming from the mechanic's lien was taken

by or in behalf of the bank. The court also found that in so doing the bank intended to deprive the Wades of their title, that such acts constituted actual fraud against them, and that the bank, intending to carry out the original fraudulent scheme to acquire the land without a foreclosure of the collateral securities which would entitle it to act under the assignment, with the definite intent of bolstering its fraudulently acquired title and depriving the Wades of any benefits of bringing this action, purchased the sheriff's certificate in the foreclosure from Jester in the name of one Vaughn and, after the expiration of the redemption, secured a deed from him. The evidence is such as to justify these findings. This situation in which the bank thus placed itself in regard to the title, raises a constructive trust thereto in favor of the Wades. It may be said that this arose when it wrongfully secured the deed from Jester by representing to his agent, McDonald, that Wade was out of it. The trust which then attached to the land precluded the bank from thereafter acquiring absolute title for itself to the exclusion of the Wades. The bank, by its own wrong, placed itself in the position where every move it made to protect the title must be held to enure to the benefit of the Wades. Where a party "obtains the legal title to land by fraud or bad faith, or by taking advantage of confidential or fiduciary relations, or in any other unconscientious manner, so that he cannot justly retain the property, equity will impress a constructive trust upon it in favor of the party who is equitably entitled to it." Henderson v. Murray, 108 Minn. 76, 121 N. W. 214, 133 Am. St. 412. We think that this principle requires us to hold that neither the redemption from the mechanic's lien foreclosure nor the acquisition of the mortgage foreclosure sale rights perfected title in the bank to the exclusion of the Wades.

### Cross Appeal by the Wades.

There is a cross appeal by the Wades which assails that part of the judgment in the equity case whereby the bank was awarded a lien on the land for the sums it had paid out. These sums were: (a) The $750 paid by honoring Wade's check of that amount given Jester to recall the notice to terminate the contract with the Wades;

(b) $4,567.92, the balance paid Jester and due on the contract when the deed was obtained from him; (c) the $9,000 paid for the Jester mortgage (This seems also to have been acquired when the sheriff's certificate on its foreclosure was obtained), and (d) the $163.24 paid in redemption from the mechanic's lien. This is a suit in equity to cancel not only the instruments tainted with usury, but to cancel the title procured by a redemption and one on a mortgage foreclosure. He who seeks equity must do equity.

There is no reason at all why the bank should not have a lien for the $750, paid at the request of the Wades to prevent a termination of the Jester contract, and the bank can at least have that much of a just claim, untainted with usury, to justify it in paying the $4,567.92, the balance due Jester. The $9,000 Jester mortgage was valid and untainted, and the bank should not be penalized for buying it. The court simply canceled the foreclosure thereof and the effort to thereby extinguish the rights of the Wades. No lien was allowed for the foreclosure costs or expenditures in the attempt to acquire title absolute. The redemption from the mechanic's lien was necessary to prevent the title of the Wades from extinguishment, and surely justified the court in imposing a lien in favor of the bank for the amount so paid out. Every cent the court allowed, the Wades were under legal obligation to pay in order to get the land under the Jester contract and to avoid the mechanic's lien judgment. There was no direct fraud or misrepresentation made by the bank to the Wades. The nearest approach to positive fraud was the statement to McDonald that "Wade was out of it." The bank was not a mere wrongful interloper in settling with Jester. There is no evidence of a binding contract to loan the Wades the money needed for that purpose, only a naked promise. The bank had the right to protect the $750 advanced and had the right under the assignment to take title from Jester, even though the assignment was usurious. No law compelled the Wades to take advantage of the usury, and morally they might not be expected to do so.

The result was the same whatever motive actuated the bank. A constructive trust was raised in favor of the Wades subject to an accounting in which the bank would be entitled to credit for all amounts paid for the acquisition and protection of the title, and

which amounts the Wades were under obligation to discharge. This situation distinguishes the case from Leqve v. Stoppel, 64 Minn. 74, 66 N. W. 208, and Stephon v. Topic, 147 Minn. 263, 180 N. W. 221, cited by counsel, which involved a conspiracy between a grantor and grantee to defraud a creditor of the grantor, and where the principle is applied that, as between such grantor and grantee, no reimbursements or indemnities may reduce the actual proceeds of the trust property to which the creditor is entitled. The reimbursement here is between the parties to the trust and does not involve the rights of creditors or outsiders.

There are numerous assignments of error relating to rulings on evidence. None seriously challenge any ruling as to testimony bearing upon the jury issue of usury. No error was made in sustaining an objection to a question asked the bank's president whether he ever charged Wade usury or more than 10 per cent on loans. A party cannot call for conclusions from his own witness. No restriction was placed upon either Mr. Clark or Mr. Wade in stating all the conversation and doings relative to the loan. Complaint is also made of the fact that Mr. Clark was called for cross-examination and while so testifying he was questioned by the bank's counsel and the whole transaction was gone over in its entirety so that, when it came to the bank's defense, it was prejudiced by rulings sustaining objections that questions asked were repetitions of those already answered, thereby preventing a presentation in an unbroken order of its side of the controversy. To a certain extent the privilege of the statute, permitting a defendant to be called for cross-examination before a plaintiff has introduced little or nothing of his own evidence, is liable to abuse. But a defendant may avoid much of which the bank complains, by refraining from examining the witness until he comes to the defense. We find nothing prejudicial in the court's ruling. On both sides the testimony as to the main facts in dispute was repeated over and over, and there is no indication that anything at all material or relevant was excluded.

We think the judgments right as to both parties and they are affirmed.