WARD, et al, Respondents, v. DAKOTA ELECTRIC CO., et al, Appellant.

WARD, et al, Respondents, v. MISSOURI RIVER TELEPHONE CO., et al, Appellants.

(231 N. W. 943.)

(File No. 6784. Opinion filed August 12, 1930.)

*T. H. Null,* of Huron, and *C. B. Randall,* of St. Paul, Minn., for Appellant.

*Gardner & Churchill,* of Huron, for Respondents.

MISER, C. Prior to October 5, 1907, E. C. Ward, respondent herein, was the owner of the majority of the stock of both the Dakota Telephone & Electric Company, hereafter referred to as the electric company, and the Missouri River Telephone Company, hereafter referred to as the Missouri River Company. Both maintained their principal office at Geddes, S. D. Ward owned 130 shares of the 158 shares outstanding of the electric company stock. He owned 1,016 shares of the 1,673 shares outstanding of the Missouri River company stock. Ward agreed to sell his stock in these companies to the defendants J. G. and E. B. Funston, who agreed to pay him therefor $35,000. They paid him $3,000 in cash, transferred to him stock in the Funston Company representing $12,000, and delivered to him their note for $20,000. They reassigned to Ward as a pledge for the payment of their note for $20,000, dated October 5, 1907, the shares of stock purchased from him. The note also provided that "the makers of this note agree that the telephone lines and other property of the Missouri River Telephone Company and Dakota Telephone & Electric Company shall not be mortgaged or sold, * * * before the full payment of this note, and further agree that the * * * property of said companies shall at all times before the full payment of this note, be kept and maintained in at least as good condition as the same now is."

From October 5, 1907, the Funstons were in complete possession and control of the property of both companies, although the delivery of all the shares of stock did not take place until December 10, 1909. In 1914, while Ward was the owner of the note and the pledgee of these shares, appellant, Dakota Central Telephone Company, and its officers entered into a conspiracy with defendants Bruce and the Funstons to destroy as competitors the said com-

panies in which respondent Ward held the stock above mentioned as pledgee. Although the terms and conditions of the agreements between Ward and the Funstons were well known to the Dakota Central Telephone Company and its officers, the officers of the Dakota Central Telephone Company procured the Funstons, as officers of the electric company and of the Missouri River Company, to call a special meeting of the stockholders thereof without notice to Ward. By representing to the stockholders assembled that the physical property of the said companies should sell for not less than $30,000, the Funstons, Bruce, and the officers of the appellant, Dakota Central Telephone Company, procured the adoption of a resolution authorizing the board of directors to sell the property to the Dakota Central Telephone Company. Thereafter, in pursuance of this conspiracy to defraud Ward and destroy the value of his security, a resolution was adopted by the directors authorizing the sale of all the physical property of the electric company to defendant Bruce for $400 and authorizing the sale of the physical proyerty of the Missouri River Company to defendant Bruce for the sum of $11,600. In pursuance of this conspiracy, the officers of said companies delivered bills of sale of said property on October 1, 1914, to Bruce. Without paying anything therefor, Bruce immediately assigned and transferred said bills of sale to appellant, Dakota Central Telephone Company, which required Bruce, out of the $12,000 which he had agreed to pay for the two properties, to disburse $11,443.50 in payment of the debts and liens against the Missouri River Company and to disburse the sum of $47.46 in payment of the taxes against the electric company. Although the pretended price of said properties was $12,000 or thereabouts, and although said properties were worth $30,000, the appellant, Dakota Central Telephone Company, fraudulently acquired the properties of both companies for about $16,000; Bruce retaining approximately $4,000. Thereupon, the appellant entered into possession of said properties and caused them to be dismantled and absorbed by its own telephone system.

The foregoing is a partial synopsis of the findings of fact upon which the judgment appealed from is based. Ward began suit to recover the amount due on the note from the Funstons, and, by reason of the conspiracy entered into between the officers of Dakota Central Telephone Company and defendants Bruce and the

Funstons and the destruction of the property as aforesaid, he asked judgment against the Dakota Central Telephone Company and Bruce as well as against the defendants Funston. Judgment on that trial was in favor of Ward against the Funstons on the note; but Bruce and the Dakota Central Telephone Company were given judgment of dismissal of Ward's action against them. Ward appealed from that part of the judgment. On that appeal, this court, at 49 S. D. 135, 150, 152, 206 N. W. 695, 701, after referring to the fact that the secretary of the Dakota Central Telephone Company attended the stockholder's meeting and saw Funston vote the stock which the secretary knew to be pledged to Ward, in favor of the sale, said: "It is apparent that defendant Bruce and the Dakota Central Telephone Company had full knowledge of the facts rendering fraudulent the said purported sale, and that they are jointly and severally liable for the conversion of the said property, and should account to the appellant for the reasonable value thereof. * * * That part of the judgment appealed from by appellant Ward is reversed, and the case is remanded, with instructions that the trial court proceed according to law to enter judgment in accordance herewith."

On petition for rehearing, the former opinion was modified by an opinion reported in 50 S. D. 416, 210 N. W. 513. Therein this court said: "So far as the petition on behalf of the Funstons is concerned, we are satisfied with the opinion as it is; but as to the Dakota Central Telephone Company the opinion does not clearly express the meaning of the court. It was not the intention of this court to invade the province of the trial court by making a finding of fact. We do not retract, however, from the statement in the opinion to the effect that the value of the properties of the Dakota Telephone & Electric Company and the Missouri River Telephone Company is 'established at not less than $30,000 by a clear preponderance of the evidence.' * * * This was the lowest value placed on the properties of both companies, but the value of the properties at the time of sale is not the measure of plaintiff's damage. While he is entitled to judgment against the Funstons for the full amount of the balance due on the note, he is entitled to judgment against the other defendants for only the amount of the value of his interest in the property converted by them. The value of his interest was only such part of the whole as the num-

ber of shares of the capital stock in each company pledged to him is of total capital stock outstanding. Therefore it will be necessary for the trial court to determine the value of the property of each company separately. The cause is remanded to the trial court, with directions to determine from either the evidence already in the record, or from such further evidence as it may deem necessary, and from such values to determine the amount of plaintiff's judgment in the manner above indicated."

This second opinion was handed down on October 22, 1926. On October 12, 1927, a retrial was had in accordance with said mandate. The trial court considered the case upon the entire record before it, including the additional testimony adduced at that trial. In addition to the findings hereinbefore summarized, the trial court found that, when the transfers were made to the appellant, Dakota Central Telephone Company, the fair value of the property of the electric company was $4,200, and the fair value of the property of the Missouri River Company was $25,800, and that the said Dakota Central Telephone Company acquired the properties of both of said companies for $16,000 when the same was worth $30,000, as all of the parties to said conspiracy well knew. The findings also recite: "The court finds that the combined properties of the Electric company and the Missouri River company was worth not less than $30,000.00, for the reason that such has been fixed and determined to be the value of said properties as a matter of law by the opinions of the Supreme Court in this case, and this court is bound by that determination, and in addition thereto, the court finds as a fact that such valuation was fully sustained by the evidence."

The court also found that, at all times therein referred to, respondent Ward held as collateral to his note 60.729 per cent of the stock of the Missouri River Company and also 82.278 per cent of the stock of the Dakota Electric Company. Finding of fact XII was as follows: "That, as part of its fraudulent scheme and plan for acquiring the physical properties of the Electric company and the Missouri River telephone company, as hereinbefore stated, for the sum of $16,000 and as a means of carrying out its said fraudulent scheme and design, Dakota Central Telephone Company arranged and required that of the said sum there should be disbursed in payment of debts or liens against the property of said Missouri

River Company, the sum of $11,443.57 and taxes of the Electric company in the sum of $47.46."

On the foregoing findings and on conclusions based thereon judgment was entered on June 27, 1928, that respondent Ward have and recover of the defendants Dakota Central Telephone Company and E. A. Bruce the sum of $19,123.76, with interest at 7 per cent from October 1, 1914, but not exceeding the amount due on the judgment theretofore had against the Funstons.

 Appellant claims that the trial court erred in not determining from the evidence whether there was fraud in the transaction by which appellant acquired the two properties and in not determining the value of such properties by its independent consideration of the evidence. But this appeal is from the judgment only. No such specifications of error were shown in the abstract. There was no motion for new trial made. Appellant has not caused it "to affirmatively appear that his brief contains a statement of all the material evidence upon the trial." Sup. Ct. Rule 4. Presumably counsel intends to rely on that which appears in the findings. Keyes v. Baskerville, 42 S. D. 381, 175 N. W. 874; Fuller v. James, etc., Co., 54 S. D. 492, 223 N. W. 713.

It is true that, in the findings on the second trial, the trial court refers to the mandate contained in the opinion of this court in the language hereinbefore quoted. It is also true that the findings as a whole show that the trial court did find from the entire record that the fair value of the property of the electric company was $4,200 and of the Missouri River Company was $25,800. Moreover, although the trial court states that it was bound by the determination of values stated by this court in its opinion, it also says: "And in addition thereto, the court finds as a fact that such valuation is fully sustained by the evidence."

We cannot assume from the findings as a whole that the trial court has ignored the language of this court in its former opinions in this case, where it said: "It was not the intention of this court to invade the province of the trial court by making a finding of fact."

And: "Therefore it will be necessary for the trial court to determine the value of the property of each company separately."

██ ██ Appellant also assigns as error that part of the con-
clusion of law wherein it is stated that appellant is "entitled to no
credit for the amount of the purchase price of said property, de-
voted to the payment of the debts and liens upon the property of
said companies." Appellant inquires how Ward can be entitled to
recover more than his just share of the assets of the corporations
in which he held stock, less their liabilities. But we cannot here
apply the rule as to the measure of damages in the ordinary case
of conversion nor the rule where a grantee has been found guilty
of constructive fraud. According to the findings, appellant is
guilty of actual fraud, willfully perpetrated upon respondent.

In Lowary v. Lowary, 43 S. D. 87, 177 N. W. 1011, 1012,
appellant had, by threats, prevented respondent from harvesting
grain to one-half of which respondent was entitled. Appellant him-
self harvested, threshed, and sold the grain. For respondent's one-
half he received $2,361.15. 'Appellant contended that, if verdict
was against him, he should be permitted to deduct his expense of
harvesting, threshing, and hauling to market. This court said:
"Such is the general rule under Section 1987, Rev. Code 1919,
where the wrongdoer acts through inadvertence, mistake, or honest
belief in his legal rights; but, where the wrongdoer acts maliciously
and intentionally, the rightful owner is entitled to treat the time
when the property is finally converted to the use of the trespasser
as the time of conversion"—citing U. S. v. Homestake Min. Co.,
54 C. C. A. 303, 117 F. 481, 486.

In the Homestake Case, the Circuit Court of Appeals of this
circuit, opinion by Sanborn, discusses the reason for the rule, and
says: "The question, then, is, did the trespasser violate the law,
which he constructively knew, recklessly, or with an actual intent
to do so, and to take an unconscientious advantage of his victim,
or did he violate it inadvertently, unintentionally, or in the honest
belief that he was exercising his own right? If the former, he
was a willful trespasser, and the value of the manufactured timber
or the extracted ore measures his liability. If the latter, he was
an innocent trespasser, and the value of the wood in the tree or of
the ore in the mine is the limit of his indebtedness."

In Stephon v. Topic, 147 Minn. 263, 180 N. W. 221, 223, it is
said: "No one should be permitted to join in a conspiracy to cheat
another and escape responsibility. There is no respectable author-

ity to support the proposition that a particeps criminis in a case of positive fraud will be afforded reimbursement or indemnity by a court of equity. The current of authority is all to the contrary. The law is stated and the cases collected in Bump, Fraud. Conv. § 628; Wait, Fraud. Conv. § 192; 12 R. C. L. 640; 3 Pomeroy Eq. Jur. § 1057; 20 Cyc. 638; and 14 Am. & Eng. Enc. Law, 344, 345."

To like effect, see Lynch v. Burt (C. C. A.) 132 F. 417, 432, and Mass. Trust Co. v. Simon Mfg. Co., 237 Mass. 92, 129 N. E. 432.

It should be remembered that the trial court, in the case at bar, made positive findings of actual fraud on the part of appellant. On these findings, the trial court made this conclusion: "Because the entire scheme * * * by which * * * Dakota Central Telephone Company * * * acquired the physical property was fraudulent and in violation of the rights of * * * Ward; * * * and because * * * Dakota Central Telephone Company and E. A. Bruce actively participated in said fraudulent scheme and design to destroy the value of the security held by * * * Ward and the payment of the debts and liens as found in Finding of Fact Number 12 was an integral part of the execution and carrying out of said fraud, * * * Dakota Central Telephone Company and E. A. Bruce are entitled to no credit for the amount of the purchase price of said property, devoted to the payment of the debts and liens upon the property of said companies."

Inasmuch as this appeal is from the judgment only, we find no reversible error in the conclusion, of which appellant complains, that appellant is "entitled to no credit for the amount of the purchase price of said property devoted to the payment of debts and liens upon the properties of said companies."

■ On the first trial of this case, judgment was entered dismissing the action as to Dakota Central Telephone Company. Ward appealed therefrom. The judgment of reversal was by Judge Polley and Circuit Judges Skinner and Eddy. Judges Gates and Sherwood dissented. On petition for rehearing on that appeal, appellant herein raised the question of the eligibility of Circuit Judges Skinner and Eddy to sit in determining the former appeal. At the opening of the second trial, appellant objected to any further proceedings in the cause because the judgment remanding the case for further proceedings was not concurred in by a major-

ity of the judges of the Supreme Court as required by section 7 of article 5 of the Constitution of South Dakota. Appellant now urges that chapter 343, Laws 1919, is unconstitutional because it permits the calling in of a circuit judge who may be under 30 years of age to sit in the place of a judge of the Supreme Court who, under section 10 of article 5 of the Constitution, must be at least 30 years of age. In answer to this, respondent points out that there was no showing that either of the circuit judges called to sit in lieu of Supreme Court judges was not at least thirty years of age. Respondent also points out other reasons why this assignment is without merit, but the foregoing is sufficient for the present. As said in State v. Mitchell, 3 S. D. 223, 228, 52 N. W. 1052, 1053: "It is a well-established and wholesome rule of law that no one can take advantage of the unconstitutionality of any provision of a law who has no interest in and is not affected by it."

Inasmuch as both of the circuit judges were fully qualified to sit in the case decided, appellant has no interest in the constitutionality of the law attacked.

No reversible error appearing, the judgment appealed from should be and is affirmed.

MISER, C., sitting in lieu of CAMPBELL, J., who deems himself disqualified.

BROWN, P. J., and POLLEY and BURCH, JJ., concur.

SHERWOOD, J. (dissenting). I dissent. It is my view that Ward was not entitled to judgment against either the Funstons or the Dakota Central Telephone Company.