**NEW HORIZON ENTERPRISES, INC., et al., Respondents,**

**v.**

**CONTEMPORARY CLOSET DESIGN, INC., et al., Defendants,**

Woodrow MFG, Inc., et al., Appellants.

No. C0–97–279.

Court of Appeals of Minnesota.

Nov. 4, 1997.

Jeffrey R. Ansel, Richard W. Black, Winthrop & Weinstine, P.A., St. Paul, for appellants.

T. Chris Stewart, Dunkley, Bennett & Christensen, P.A., Minneapolis, for respondents.

Considered and decided by SHORT, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

SHORT, Judge.

In an action to collect an arbitration award, the judgment creditor claims the debtor corporation fraudulently transferred assets to avoid its creditors. The parties stipulated to facts, except the value of the transferred assets, and tried their dispute to the court. The trial court found the debtor transferred property in violation of the Uniform Fraudulent Transfer Act, Minn.Stat. §§ 513.44, 513.45(b) (1996). On appeal from an adverse judgment of $97,431.62, plus $2,576.90 in costs, the debtor argues the trial court erred in: (1) applying the Uniform Fraudulent Transfer Act to a strict foreclosure under Minn.Stat. § 336.9–505 (1996); (2) denying its post-trial motions; and (3) finding its shareholder personally liable for the judgment.

## FACTS

Contemporary Closet Design, Inc. (CCD), a Minnesota corporation located in Hopkins, Minnesota, manufactured furniture items. Merlin Anderson (Anderson) served as a director, officer, and shareholder of CCD. Anderson's son served as CCD's president. Beginning in September 1984, Anderson loaned CCD money, and CCD made periodic payments of interest and principal to Anderson.

In 1989, New Horizon Enterprises, Inc. (judgment creditor) bought various shelving and storage units from CCD for use in the judgment creditor's child care facilities. The judgment creditor was dissatisfied with the furniture provided by CCD. When CCD's efforts to cure alleged product defects were unsuccessful, the judgment creditor sued CCD in 1992 for breach of contract and warranties, misrepresentation, unjust enrichment, and negligent design. In the middle of October 1994, the parties submitted their contract dispute to binding arbitration.

After commencement of the judgment creditor's lawsuit, but before the entry of the adverse arbitration award, CCD executed and delivered to Anderson two promissory notes and security agreements relating to outstanding loans. On October 1, 1993,

Anderson filed a UCC–1 filing statement to perfect his interests. On January 1, 1995, CCD and Anderson executed a demand discretionary revolving credit agreement and amended promissory notes.

On May 12, 1995, the arbitrator issued findings of fact, conclusions of law, and an award of $86,964.24 in favor of the judgment creditor. On June 6, 1995, Anderson resigned as director and officer of CCD. On June 9, Anderson demanded that CCD pay $201,964.24 on the outstanding promissory notes. CCD did not pay its debt to Anderson. However, CCD did pay in full its debts to all unsecured creditors, except the judgment creditor.

On June 16, 1995, Anderson filed articles of incorporation for Woodrow MFG, Inc. (Woodrow). On June 21, 1995, CCD's balance sheets showed liabilities exceeding the value of its assets. That same day, Anderson transferred his rights in the credit agreements, promissory notes, security agreements, and financing statement to Woodrow. Woodrow then requested delivery of the collateral subject to the security agreement, and advised CCD that it intended to retain the collateral in satisfaction of the debt.

In its new furniture manufacturing business, Woodrow used CCD's vendors, product name, location, and equipment. Anderson is Woodrow's president, secretary, treasurer, and sole shareholder. Anderson's son supervises Woodrow's daily operations. In addition, Woodrow hired former CCD employees and exercised its rights under the assignment of contracts and lease.

On June 22, 1995, an order for judgment was entered on the arbitration award. The judgment creditor brought this lawsuit to collect its judgment.

### ISSUES

I. Does the Uniform Fraudulent Transfer Act apply to the transfer of assets from Contemporary Closet Design, Inc. to Woodrow MFG., Inc.?

II. Does the evidence sustain the trial court's findings of fact and conclusions of law?

III. Can Merlin Anderson be held personally liable for the debt owed to the judgment creditors?

### ANALYSIS

This court will not set aside a trial court's findings of fact unless clearly erroneous. Minn. R. Civ. P. 52.01; *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987). On appeal from the decision of a trial court sitting without a jury, we determine whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and judgment. *Gruenhagen v. Larson,* 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). While we afford due regard to a trial court's opportunity to judge witness credibility, we do not defer to a trial court's decision on purely legal issues. *See* Minn. R. Civ. P. 52.01 (mandating reviewing court afford due regard to trial court's credibility determinations); *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984) (holding appellate court need not give deference to trial court's legal determinations).

### I.

The Uniform Fraudulent Transfer Act (UFTA) prohibits a debtor from transferring property with the intent to hinder, delay, or defraud any creditors. *See generally* Minn.Stat. §§ 513.41–513.51 (1996); *In re Butler,* 552 N.W.2d 226, 231 (Minn.1996). Creditors who collude with a debtor in those transactions are not protected either. Douglas G. Baird & Thomas H. Jackson, *Fraudulent Conveyance Law and its Proper Domain,* 38 Vand. L. Rev. 829, 829–30 (1985). CCD, Woodrow, and Anderson argue the trial court erred in applying the UFTA to a secured party's retention of collateral in satisfaction of a debtor's defaulted obligation. *See* Minn.Stat. § 336.9–505 (1996) (allowing secured creditor to retain collateral in satisfaction of debt if proper notice is provided); *see also Butler,* 552 N.W.2d at 228 (holding Fraudulent Transfer Act does not apply to regularly conducted, non-collusive cancellations of contract for deed); *Burke v. McCanna (In re Czel),* 202 B.R. 778, 783 (Bankr. D.N.M.1996) (concluding properly conducted

forfeiture not voidable when transfer comports with state law). Although the UFTA does not apply to a non-collusive foreclosure sale, the statute is applicable to a transaction, despite legal formalities, that strips the debtor of all property available for execution and involves numerous suspicious circumstances. *See Citizens State Bank of Hayfield v. Leth,* 450 N.W.2d 923, 925–27 (Minn.App.1990) (holding transfer fraudulent under the UFTA where debtor transferred land to family trust for $100,000 five days after submitting financial statement to lender that land was asset valued at $485,000); *Argonaut Ins. Co. v. Cooper,* 395 N.W.2d 119, 122 (Minn.App.1986) (holding contract for deed void where debtor failed to produce evidence to explain suspicious circumstances or rebut numerous indicia of fraud); *cf. Northern Pac. Ry. Co. v. Boyd,* 228 U.S. 482, 506–08, 33 S.Ct. 554, 561, 57 L.Ed. 931 (1913) (holding foreclosure sale invalid where, although regular in form, free from fraud, and at a fair price, stockholders retained interest in resulting entity and no provision was made for payment of unsecured creditors); *Jackson v. Star Sprinkler Corp. of Fla.,* 575 F.2d 1223, 1226 (8th Cir. 1977) (noting courts must be vigilant where fraudulent scheme involved regardless of how technically legal each step in the scheme has been orchestrated).

The judgment creditor challenged (1) CCD's relationship with Anderson and Woodrow, (2) the timing of the notes, agreement, and transfer, (3) the purpose of the transfer from Anderson to Woodrow, and (4) Woodrow's foreclosure on all of CCD's collateral. Because the parties did not stipulate that Anderson had a perfected, first-secured claim or that proper notice was provided, the question before us is not one of interpreting the rules of priority under Article 9. *See* Minn.Stat. § 336.9–301 (1996) (listing priority of multiple parties' rights in collateral). The trial court found the perfection of Anderson's security interest set the fraudulent scheme in motion. No law permits the recipient of a preferential transfer to further the debtor's plans to defraud other creditors. *See* Minn. Stat. § 336.9–201 (1996) (stating nothing in Article 9 validates practice otherwise illegal); *see, e.g., Textron Fin. Corp. v. Kruger,* 545 N.W.2d 880, 884–85 (Iowa.Ct.App.1996) (in-

validating preferential transfer because preferred creditor intentionally participated in debtor's fraud). Under these circumstances, the form of CCD's transaction with Woodrow cannot overcome its nature. The alleged foreclosure is not a "strict foreclosure" protected under Article 9. Thus, the trial court properly applied the UFTA to the transfer of assets from CCD to Woodrow.

## II.

Under the UFTA, liability can be imposed for transfers of property with actual or constructive intent to defraud a creditor. *Butler,* 552 N.W.2d at 231; *see also* Minn. Stat. § 513.47 (outlining relief that may be obtained in an action against transfer or obligation under §§ 513.41 to 513.51). Generally under the UFTA, the aggrieved creditor bears the burden of proving actual or constructive intent to defraud. *Snyder Elec. Co. v. Fleming,* 305 N.W.2d 863, 867 (Minn. 1981). In determining actual intent under the UFTA, the fact finder may consider whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn.Stat. § 513.44(b). The relationship between the parties is a significant consideration. *See Snyder Elec. Co.*, 305 N.W.2d at 867 (finding corporations under common control of same officers and directors regarded with skepticism by courts and closely scrutinized); *Neubauer v. Cloutier*, 265 Minn. 539, 544 n. 4, 122 N.W.2d 623, 628 n. 4 (1963) (finding transactions between parents and children are scrutinized and analysis may change if transaction lacking consideration). In determining whether constructive fraud exists, the fact finder determines whether the debtor made the transfer:

without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

Minn.Stat. § 513.44(a)(2); *see also Butler*, 552 N.W.2d at 231 (outlining two situations where transfer made without receiving reasonably equivalent value is constructively fraudulent).

The trial court concluded CCD's transfer of assets to Woodrow through Anderson was fraudulent as to the judgment creditor. The trial court found: (1) the judgment creditor's claim arose before the transfer; (2) CCD's value as of June 21, 1995, was $260,000; (3) CCD owed Anderson $201,790.61; (4) CCD's transfer of assets to Woodrow constituted a transfer to an insider; and (5) the transfer was concealed from the judgment creditor. CCD, Anderson, and Woodrow argue these findings are contrary to the stipulated facts and the testimony from the value experts. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994) (holding reasonably equivalent value is price received at foreclosure sale, as long as in compliance with all requirements of state's foreclosure laws).

Although the parties stipulated to a majority of facts, the matter of reasonably equivalent value and the ultimate determination of fraud were submitted to the trial court for resolution. *See* Minn. R. Civ. P. 52.01 (holding findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous). A trial court is entitled to draw reasonable inferences from the facts and to determine the weight to be afforded competing expert testimony. *See id.* (mandating reviewing court afford due regard to trial court's credibility determinations). After a careful review of the record, we conclude the evidence amply sustains the trial court's factual findings of value and conclusions of law regarding fraud under the UFTA. We are influenced by Anderson executing the promissory notes and security agreements, filing his security interest, demanding full payment from CCD, and transferring his interests to Woodrow during the pendency of the judgment creditor's lawsuit. This series of transactions caused CCD to become insolvent and stripped CCD of all property available for execution. In addition, it is significant that Anderson was an officer, director, and shareholder of both CCD and Woodrow, and Anderson's son ran the daily operations of both companies. Given these facts, we cannot say the trial court erred in determining: (1) Anderson was an insider; (2) the judgment creditor established eight of eleven statutory badges of fraud; and (3) CCD's transfer of assets was a "professionally executed scheme to deny a judgment creditor their due." Under these circumstances, the trial court properly concluded CCD's transfer of assets to Woodrow through Anderson was a fraudulent transfer in violation of the UFTA.

### III.

Anderson argues the trial court erred in finding him personally liable for the debt

owed to the judgment creditor. However, the UFTA permits a judgment to be entered against "the first transferee of the asset or the person for whose benefit the transfer was made." Minn.Stat. § 513.48(b)(1); *cf. Stephon v. Topic,* 147 Minn. 263, 267, 180 N.W. 221, 223 (1920) (holding where grantor and grantee conspired to commit fraud on grantor's creditors, grantee answerable to creditors for grantor's indebtedness to them). Anderson, as the first transferee of the asset, falls within the class of persons against whom judgment can be entered. *See* Minn. Stat. § 645.08 (1996) (mandating words and phrases be construed according to rules of grammar and according to their common and approved usage).

The trial court found Anderson "not only participated, but originated the scheme" to frustrate the judgment creditor's efforts to enforce its arbitration award. Under these facts, the trial court properly concluded Anderson was personally liable for the judgment. Because of our resolution of this issue under the UFTA, we need not address the argument regarding "piercing the corporate veil."

## DECISION

The debtor's transfer of assets to a successor corporation, incorporated by the former officer, director, and shareholder of the debtor, was conducted with the intent to defraud the judgment creditor in violation of the UFTA. Under that statute, the debtor's former officer, director, and shareholder is personally liable for the debt owed to the judgment creditor.

**Affirmed.**