# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-0030

George Reilly,
as trustee of the Nathan L. Bentson 1993 Irrevocable Trust, et al.,
Respondents,

vs.

Michael J. Antonello, et al.,
Appellants.

**Filed August 18, 2014**
**Affirmed**
**Chutich, Judge**

Ramsey County District Court
File No. 62-CV-13-4405

Phillip Gainsley, Minneapolis, Minnesota (for respondents)

Daniel M. Duffek, Warren E. Peterson, Peterson, Fram & Bergman, P.A., St. Paul, Minnesota (for appellants)

Considered and decided by Rodenberg, Presiding Judge; Johnson, Judge; and Chutich, Judge.

## S Y L L A B U S

A sole director, officer, and shareholder of a closely held corporation who facilitates indirect transfers of corporate stock by the corporation to his spouse to hinder his creditors from collecting on judgments against him violates the Minnesota Uniform Fraudulent Transfer Act. Minn. Stat. §§ 513.41–.51 (2012).

**O P I N I O N**

**CHUTICH**, Judge

Appellants Michael Antonello, Jean Antonello, and Michael J. Antonello Insurance Associates Ltd. appeal the district court's grant of summary judgment to respondents George Reilly, Meridian Bank, and Thomas Braman. Appellants attack the district court's ruling that Michael Antonello fraudulently transferred shares of stock under the Minnesota Uniform Fraudulent Transfer Act, asserting that, because Michael Antonello conducted the transfers through a corporation, the transfers were permissible. Because Michael Antonello manipulated shares of corporate stock to place property otherwise available to his creditors beyond their reach, we affirm.

**FACTS**

In 2010, respondents George Reilly, Meridian Bank, and Thomas Braman obtained judgments in excess of $3 million against appellant Michael Antonello. Antonello was the sole shareholder, director, and officer of Michael J. Antonello Insurance Associates Ltd. (the corporation), a Minnesota corporation. On January 2, 2013, the Ramsey County Sheriff served a third-party levy upon the corporation at the request of respondents to levy all shares owned in the corporation by Michael Antonello. At that time, Michael Antonello owned 10,000 shares of capital stock in the corporation, which then comprised all of the issued and outstanding capital stock of the corporation.

On January 22, 2013, twenty days after the sheriff's levy, Michael Antonello signed a corporate resolution to amend the articles of incorporation to authorize the issuance of 500,000 total shares of capital stock and the retention of a single class of

2

voting stock. The next day, the corporation, through the actions of Michael Antonello, issued a certificate in response to the sheriff's levy stating that Michael Antonello owned 10,000 shares of stock in the corporation. The corporation, again through Michael Antonello, also approved an agreement for appellant Jean Antonello, Michael Antonello's wife, to purchase 90,000 shares of stock from the corporation for $1,000. The Antonellos then executed a resolution as shareholders to name themselves as the directors and officers of the corporation. Michael Antonello remained president and treasurer, and Jean Antonello took the position of vice president.

On January 25, 2013, Michael and Jean Antonello, as officers of the corporation, approved an agreement for Jean Antonello to purchase an additional 400,000 shares from the corporation for $100. Based on the two purchase agreements executed by the corporation, Michael Antonello changed from owning one-hundred percent of the shares of the corporation to two percent. In total, Jean Antonello purchased ninety-eight percent of the shares in the corporation for $1,100.

In April 2013, the Ramsey County Sheriff sold Michael Antonello's 10,000 levied shares to respondents for $10,000 and transferred the shares to respondents with a sheriff's certificate. Only after the sale did the Antonellos inform respondents that the 10,000 shares would not reflect one-hundred-percent ownership of the stock, but only two percent of the shares of the corporation. Respondents then sued Michael and Jean Antonello and the corporation, seeking to avoid the transfers under the Minnesota Uniform Fraudulent Transfer Act. *See* Minn. Stat. §§ 513.41–.51 (2012).

3

At her deposition, Jean Antonello testified that Michael Antonello asked her to purchase 490,000 shares of stock in the corporation so that the corporation would not be "vulnerable" to the judgments that respondents obtained against Michael Antonello in 2010. She said that she purchased the shares and became vice president of the corporation as a "formality" at the direction of her husband because she trusted his advice. Jean Antonello explained that Michael Antonello told her that she needed to purchase the shares because it "would ensure that [she] would remain in control of the corporation." She stated that she did not know what duties she had as vice president of the corporation and that the corporation continued to be operated by Michael Antonello.

Respondents moved for summary judgment, and the parties agreed that the facts of the case were not in dispute. The district court granted respondents' motion and voided the corporation's transfers of stock to Jean Antonello, making respondents the sole shareholders in the corporation. This appeal followed.

## ISSUES

I.    Do respondents have standing under the Minnesota Uniform Fraudulent Transfer Act to challenge the issuance of shares to appellant Jean Antonello by the corporation?

II.   Did the district court properly grant respondents' motion for summary judgment and void the issuance of corporate shares to appellant Jean Antonello by the corporation under the Minnesota Uniform Fraudulent Transfer Act?

## ANALYSIS

### I.    Standing

Appellants assert that respondents have no standing to challenge the corporation's sale of shares to Jean Antonello. They contend that, because the sale of stock to Jean

4

Antonello took place *before* respondents became shareholders, respondents did not have standing as shareholders to sue the corporation. Because respondents sued appellants as creditors under the Minnesota Uniform Fraudulent Transfer Act and not as shareholders, we affirm the district court's ruling.

"Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn. 1996). A plaintiff may acquire standing in one of two ways: (1) the plaintiff suffers some "injury-in-fact"; or (2) the plaintiff is granted standing through some legislative enactment. *Id.* A plaintiff who lacks standing may not bring a suit. *Id.*

The Minnesota Uniform Fraudulent Transfer Act "prohibits a debtor from transferring property with the intent to hinder, delay, or defraud any creditors." *New Horizon Enters., Inc. v. Contemporary Closet Design, Inc.*, 570 N.W.2d 12, 14 (Minn. App. 1997). The act defines "debtor" as "a person who is liable on a claim" and defines "creditor" as "a person who has a claim." Minn. Stat. § 513.41(4), (6). Because respondents obtained judgments against appellant Michael Antonello, they are his creditors, and he is a debtor under the act. Moreover, respondents assert that, to frustrate their collection attempts, Antonello used his unilateral corporate authority to indirectly transfer assets—transactions prohibited by the act. Respondents, as creditors, thus have statutory standing.

Appellants rely upon an unpublished case to support their standing argument. *Rydrych v. GK CAB Co., Inc.*, No. A11-471, 2011 WL 5829337 (Minn. App. Nov. 21,

5

2011).  *Rydrych* is not persuasive, however, because it does not involve a claim under the Minnesota Uniform Fraudulent Transfer Act.  *Rydrych* involved a shareholder who sued a corporation for legally issuing and selling shares of stock before the shareholder owned stock in the corporation.  *Id.* at *1–2.  Because the appellant in *Rydrych* did not own stock in the corporation at the time the acts he complained of took place, he did not have standing as a *shareholder* to sue the corporation.  *Id.* at *3, *9.  Here, respondents sued appellants as *creditors*, not as shareholders.  Because respondents are creditors under the Minnesota Uniform Fraudulent Transfer Act, we hold that they had standing to bring this claim.

## II.     Summary Judgment

The Antonellos and their closely held corporation contend that the district court erred by granting summary judgment to respondents because the corporation legally transferred shares of stock to Jean Antonello.  They reason that the corporation is not a debtor of respondents and its transfers do not therefore run afoul of the Minnesota Uniform Fraudulent Transfer Act.  Because Michael Antonello coordinated the transfers of corporate stock to his wife to dilute his own shares in the corporation to frustrate his creditors' attempts to collect on a judgment, we affirm.

We review de novo a district court's grant of summary judgment "to determine whether any genuine issue of material fact exists and whether the district court correctly applied the law."  *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014).  Here, the parties agree that no factual dispute exists, so we review the district court's application of the relevant law.  *See id.*

6

"The Uniform Fraudulent Transfer Act . . . prohibits a debtor from transferring property with the intent to hinder, delay, or defraud any creditors." *New Horizon*, 570 N.W.2d at 14 (citing Minn. Stat. §§ 513.41–.51 (1996)); *see* Minn. Stat. § 513.51 ("Sections 513.41 to 513.51 may be cited as the 'Uniform Fraudulent Transfer Act.'"). The Minnesota Uniform Fraudulent Transfer Act's "purpose is aligned with that of Minnesota's predecessor laws—to prevent debtors from placing property that is otherwise available for the payment of their debts out of the reach of their creditors." *Citizens State Bank*, 849 N.W.2d at 60. The act "is a remedial statute and is meant to be construed broadly." *Finn v. Alliance Bank*, 838 N.W.2d 585, 599 (Minn. App. 2013), *review granted* (Minn. Nov. 12, 2013); *see also Lind v. O.N. Johnson Co.*, 204 Minn. 30, 40, 282 N.W. 661, 667 (1938) (stating that the act is "remedial and as such should be liberally construed").

The fraud provision of the act states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor[.]

Minn. Stat. § 513.44(a)(1). "Transfer" is defined broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Minn. Stat. § 513.41(12). "Under the [act], liability can be imposed for transfers of property with actual or constructive intent to

7

defraud a creditor." *New Horizon*, 570 N.W.2d at 15.  A creditor may bring an action for relief from a fraudulent transfer to "avoid[ ] . . . the transfer or obligation to the extent necessary to satisfy the creditor's claim."  Minn. Stat. § 513.47(a)(1).

To determine whether a person transferred assets fraudulently under the Minnesota Uniform Fraudulent Transfer Act, we consider whether any of the following "badges of fraud" exist.  *See Citizens State Bank*, 849 N.W.2d at 59 (referring to "badges of fraud" as "certain suspicious circumstances that frequently accompanied fraudulent transfers"). These "badges of fraud" are circumstantial evidence of a person's intent to defraud:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn. Stat. § 513.44(b)(1)–(11); *see also In re Butler*, 552 N.W.2d 226, 231 (Minn. 1996) (stating that courts rely on "badges of fraud" because "the intent to hinder, delay, or defraud creditors is seldom susceptible of direct proof").

Under the act, "[t]he aggrieved creditor ordinarily bears the burden of proving a conveyance is fraudulent, but the relationship between the parties to a transaction may shift this burden to varying degrees." *Snyder Elec. Co. v. Fleming*, 305 N.W.2d 863, 867 (Minn. 1981). Transfers between spouses are presumptively fraudulent. *Citizens State Bank*, 849 N.W.2d at 62; *see Kummet v. Thielen*, 210 Minn. 302, 305–06, 298 N.W. 245, 246–47 (1941) (stating that a "transfer between husband and wife is presumed to be fraudulent as to existing creditors" but noting that a "transfer by a husband to his wife of property which belongs to her legally or equitably is not fraudulent as to his creditors"). When a transfer occurs between spouses, the burden of proving that the transfer was not made fraudulently is on the transferee. *See State Bank of New London v. Swenson*, 197 Minn. 425, 428, 267 N.W. 366, 367–68 (1936).

Here, the district court applied these factors and voided the corporation's transfers of stock to Jean Antonello. The district court first determined that Michael Antonello's use of his unilateral corporate authority to "transfer[] 98% ownership of the Corporation to his wife over a three-day period of time" was an indirect transfer under the act. It explained that the statute's inclusion of indirect transfers in the definition of "transfer" recognizes that fraudulent transfers are "often made through clever and technical legal mechanisms."

The district court next determined that the transfer of stock was made with fraudulent intent, noting that appellants failed to rebut the presumption of fraud for a transfer between spouses. Even setting aside this presumption of fraud for marital

9

transfers, however, the district court found "ample badges of fraud surrounding the transaction." These badges of fraud included:

> The transfer was made to an insider, Mr. Antonello had been sued prior to the transfer, the transfer's attendant corporate governance changes were viewed as a "formality" by Ms. Antonello and operations remained unchanged, there is no evidence that the purchase was made for equivalent value and no specified need or use for the same proceeds, the timing of the transfer directly coincides with Defendants' response to the levy, the transfer was not disclosed prior to the sheriff's sale, and Ms. Antonello testified that the transfer was made "because of the judgment."

Based on the undisputed facts of the case, we agree with the district court's reasoning.

The record demonstrates that Michael Antonello's actions meet the broad definition of a transfer set out in the act. *See* Minn. Stat. § 513.41(12). In his official capacity as sole director, officer, and one-hundred-percent shareholder of the company, Michael Antonello amended the corporation's articles of incorporation to authorize the issuance of 490,000 new shares of stock. Michael Antonello then acted as a shareholder, officer, and director of the corporation to facilitate two transfers of those new shares of stock to his wife so that she would own ninety-eight percent of the corporation. *See* Minn. Stat. § 513.41(12); *Finn*, 838 N.W.2d at 599; *New Horizon*, 570 N.W.2d at 16. The Minnesota Uniform Fraudulent Transfer Act is to be interpreted broadly and is intended to apply to indirect transfers through a closely held corporation when the transfers are facilitated by a sole shareholder, officer, and director of the corporation. *See* Minn. Stat. § 513.41(12); *Finn*, 838 N.W.2d at 599.

The undisputed facts next show that Michael Antonello acted fraudulently to manipulate the corporation to dilute the value of his levied 10,000 shares of stock from one-hundred-percent ownership to two-percent ownership before the sheriff's sale. Jean Antonello, who was inexperienced in corporate and financial matters, testified at a deposition that she purchased 490,000 shares of stock and became an officer and director in the corporation at Michael Antonello's request and that he told her that they needed to "remain in control of the corporation" "because of the judgment[s]." The dilution and transfer of shares by Michael Antonello through the corporation resulted in the original 10,000 shares owned by Michael Antonello losing ninety-eight percent of their value before they were sold at the sheriff's sale to satisfy part of the judgments that he owed to respondents. When respondents purchased Michael Antonello's 10,000 shares of stock at the sheriff's sale, they received only two-percent ownership in the corporation as opposed to Michael Antonello's one-hundred-percent ownership interest at the time of the sheriff's levy.

Multiple badges of fraud are present here: the transfers were "to an insider"; "the debtor retained possession or control of the property transferred after the transfer"; the transfers were "concealed"; and "before the transfer[s] [were] made . . . , the debtor had been sued or threatened with suit." *See* Minn. Stat. § 513.44(b)(1)–(4). In addition to several badges of fraud being present in this case, appellants did not attempt to rebut the presumption that the transfers of stock between the corporation and Jean Antonello were fraudulent as transfers between spouses. *See Snyder Elec.*, 305 N.W.2d at 867.

11

Appellants assert that the corporation legally diluted Michael Antonello's shares before the sheriff's sale, but this argument ignores the reality that Michael Antonello was exclusively responsible for the actions of the corporation and that he fraudulently transferred assets to the detriment of his creditors. To allow a sole director, officer, and shareholder to mask his fraudulent actions behind the façade of a closely held corporation would defy the plain meaning and intent of the Minnesota Uniform Fraudulent Transfer Act. *See* Minn. Stat. § 513.44; *New Horizon*, 570 N.W.2d at 14, 16.

## D E C I S I O N

Michael Antonello, as a debtor of respondents and sole owner, officer, and director of a closely held corporation, fraudulently facilitated indirect transfers of stock to his spouse solely to dilute the value of his shares of stock that were levied to satisfy part of a judgment against him. The district court therefore properly granted summary judgment in favor of respondents under the Minnesota Uniform Fraudulent Transfer Act.

**Affirmed.**