# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0980

Landmark Community Bank, N.A.,
Respondent,

vs.

John D. Klingelhutz, et al.,
Appellants.

**Filed February 1, 2016**
**Affirmed**
**Kirk, Judge**

Washington County District Court
File No. 82-CV-14-325

John F. Bonner III, St. Louis Park, Minnesota (for respondent)

Anthony Gabor, Richard L. Morris, Morris Law Group, P.A., Edina, Minnesota (for appellants)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Chutich, Judge.

## S Y L L A B U S

Real property securing a guaranty mortgage is an asset under the Minnesota Uniform Fraudulent Transfer Act when, at the time of transfer, there was no claim of default upon the underlying principal or the guaranty mortgage and the property had value. Minn. Stat. §§ 513.41-.51 (2014 & Supp. 2015).

**O P I N I O N**

**KIRK**, Judge

Appellants, husband and wife, challenge the district court's entry of judgment in favor of respondent-creditor, declaring their transfer of real property to wife's limited liability company (LLC) as void under the Minnesota Uniform Fraudulent Transfer Act (MUFTA).[1] The real property secured a guaranty mortgage of up to $1,000,000 serving as additional collateral on a $7,750,000 construction loan that was obtained by Vista Canyon, LLC, of which husband is the chief manager.[2] Husband and wife contend that the property is not an asset under the act because it was fully encumbered by a valid lien when they transferred it to wife's LLC, and the transfer was not fraudulent. The property had considerable equity because, at the time of transfer, there was no default alleged on the guaranty mortgage and the assessed value of the property was over $900,000. Because the property securing the guaranty mortgage is an asset under MUFTA, and husband and wife

---

[1] In 2015, the Minnesota Uniform Fraudulent Transfer Act was amended to the Minnesota Uniform Voidable Transactions Act. *See* Minn. Stat. §§ 513.41-.51 (Supp. 2015). The amended statute does not apply to the pending litigation because the effective date and application of the amendments do not apply to a transfer made before August 1, 2015. *See* 2015 Minn. Laws, ch. 17, § 13. *See also Braylock v. Jesson*, 819 N.W.2d 585, 588 (Minn. 2012) ("When the Legislature merely clarifies preexisting law, the amended statute applies to all future or pending litigation. If, on the other hand, the amendment changes preexisting law, the amendment is not retroactive unless the Legislature states otherwise." (citations omitted)).

[2] For ease of reading, we have chosen to adopt the phrase "guaranty mortgage" as used by the parties at the district court and appellate level. The guaranty mortgage secured the payment of up to $1,000,000 in favor of the mortgagee in the event that the mortgagor defaulted on the principal loan.

2

transferred the property to wife's LLC in order to avoid paying husband's creditors, we affirm.

## FACTS

In 2013, respondent Landmark Community Bank, N.A., a judgment creditor, sued appellants John D. Klingelhutz (husband) and his wife, Durene D. Klingelhutz (wife), seeking a declaratory judgment that husband's transfer of real property to wife's LLC was fraudulent and void because it violated MUFTA, Minn. Stat. §§ 513.41-.51 (2014 & Supp. 2015). Landmark asserted that its judgment lien was a valid and senior interest in the property, and it requested costs and disbursements. In 2014, the district court held a bench trial. No witnesses testified, but the parties stipulated to the admission of several exhibits and submitted post-trial written briefs. The district court deemed husband and wife's requests for admissions to be admitted because Landmark failed to timely answer. The district court's findings of fact are summarized below.

Husband and wife owned real property in Bayport (Bayport property) as joint tenants with rights of survivorship. In 2005, they recorded their warranty deed of the Bayport property with the Washington County Recorder. In January 2008, Vista Canyon obtained a $7,750,000 construction loan from The RiverBank to purchase and improve real property in Hudson, Wisconsin. Husband and wife simultaneously executed a guaranty mortgage of up to $1,000,000 to RiverBank on the Bayport property, which could be foreclosed upon in the event of default on the Vista Canyon loan. The guaranty mortgage was promptly recorded. The guaranty mortgage contained an anti-alienation clause:

3

The [m]ortgagor shall not sell, convey, transfer, encumber or mortgage the [p]remises or any part thereof or any interest therein, or be divested of [m]ortgagor's title or any interest therein in any manner or way, whether voluntary or involuntary, *without the written consent of the [m]ortgagee.* Consent by the mortgagee as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence.

(Emphasis added.)

In 2009, husband, wife, and Riverbank executed a guaranty-mortgage-modification agreement. Relevant to this appeal, the modification agreement added language specifically referencing that the Vista Canyon loan was secured by the guaranty mortgage on the Bayport property. The anti-alienation clause remained unchanged, stating that "[a]ll original terms of the [m]ortgage shall remain in full force and effect except as amended hereby." The guaranty-mortgage-modification agreement was promptly recorded.

Meanwhile, in 2009, Landmark sued husband for an unpaid debt. On October 25, 2011, husband and wife transferred the Bayport property by quitclaim deed to Duff Investments MN, LLC for consideration of less than $500. Wife is the registered agent of Duff Investments, which is a single-member LLC wholly owned and directed by her. In April 2012, husband and wife recorded the conveyance in Washington County. It assessed the property-tax value of the Bayport property at $924,000 in 2011 and $919,600 in 2012. In 2013, Landmark obtained a judgment against husband totaling $403,524.42.

In 2012, Central Bank received RiverBank's assets and obligations, including the guaranty mortgage under the Federal Deposit Insurance Corporation regulations. There is no evidence in the record that Central Bank, the new mortgagee, gave husband and wife

4

written permission to transfer the property, as required under the anti-alienation clause of the guaranty mortgage.

Despite the fact that the Bayport property was encumbered by the guaranty mortgage in an amount up to $1,000,000, the district court found that the Bayport property had considerable value at the time husband and wife transferred it because there was no default, claim, or action pursuant to the guaranty mortgage. Also, wife was not indebted to husband at the time of the transfer.

The district court concluded that husband and wife's transfer of the Bayport property was fraudulent because it was intended to hinder, delay, and defraud creditors, including Landmark. It did not credit husband and wife's argument that Landmark had admitted that the property was not an asset under MUFTA because the guaranty mortgage's potential debt exceeded the property's tax-assessed value in 2011. The district court recognized that, while the guaranty mortgage could have some effect upon the property's value, the extent of the encumbrance on the property was unknown until a demand was made upon the guaranty mortgage. It concluded that the property was an asset under MUFTA because there was no claim against or default under the guaranty mortgage at the time of transfer, and the property had considerable value.

The district court found that Landmark was entitled to declaratory judgment that the transfer was void under MUFTA and that its judgment lien on the Bayport property was senior to the interest of wife's LLC. It also ordered husband and wife to pay Landmark's costs and disbursements.

Husband and wife appeal.

5

**ISSUES**

1.    Did the district court err when it found that the Bayport property was an asset under MUFTA?

2.    Did the district court err when it held that husband and wife fraudulently transferred the Bayport property to wife's LLC?

**ANALYSIS**

**I.    The district court did not err when it found that the Bayport property was an asset under MUFTA.**

"When reviewing a declaratory judgment action, we apply the clearly erroneous standard to factual findings and review the district court's determinations of law de novo." *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 615 (Minn. 2007) (citations omitted); *see also Skyline Village Park Ass'n v. Skyline Village L.P.*, 786 N.W.2d 304, 306-07 (Minn. App. 2010). "In a declaratory judgment action tried without a jury, the court as the trier of facts must be sustained in its findings unless they are palpably and manifestly contrary to the evidence." *Samuelson v. Farm Bureau Mut. Ins. Co.*, 446 N.W.2d 428, 430 (Minn. App. 1989), *review denied* (Minn. Nov. 22, 1989).

"[MUFTA] prohibits a debtor from transferring property with the intent to hinder, delay, or defraud any creditors." *Reilly v. Antonello*, 852 N.W.2d 694, 698 (Minn. App. 2014) (quotation omitted). MUFTA's purpose is "to prevent debtors from placing property that is otherwise available for the payment of their debts out of the reach of their creditors." *Id.* at 699 (quotation omitted). "The act is a remedial statute and is meant to be construed broadly." *Id.* (quotation omitted).

6

The controlling issue in this appeal is whether the Bayport property is an "asset" as defined by MUFTA. *See* Minn. Stat. § 513.41(2)(i). An "asset" is defined as property of a debtor, but does not include "property to the extent it is encumbered by a valid lien." *Id.* A valid lien is defined as a "charge against or an interest in property to secure payment of a debt or performance of an obligation" that is effective against the holder of a subsequent lien. *Id.* (8), (13).

Husband and wife argue that the district court erred in finding that the Bayport property was an asset because it was fully encumbered by a valid lien at the time of transfer. In support of their position, they point to admissions made by Landmark including: the property has at all times been subject to a guaranty mortgage in the amount of $1,000,000; after the transfer, the property remained and is still subject to the guaranty mortgage; the property's current value as well as its value from January 1, 2011 through October 25, 2011, was less than $1,000,000; the outstanding indebtedness secured by the guaranty mortgage is in excess of $1,000,000; and the existing liens and encumbrances on the property are superior to Landmark's judgment lien. They also cite rulings from other state appellate courts holding transfers of property that are fully encumbered by a valid lien are not fraudulent under the applicable state's version of the Uniform Fraudulent Transfer Act.

Any matter admitted pursuant to Minn. R. Civ. P. 36.02, "is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Admissions include matters of fact, mixed questions of law and fact, and matters of opinion and conclusion. Minn. R. Civ. P. 36.01 1975 comm. cmt. "A Rule 36 admission is comparable to an admission in pleadings . . . ." *Sec. State Bank of Aitkin v. Morlock*, 355

7

N.W.2d 441, 445 (Minn. App. 1984). In essence, husband and wife assert that Landmark's admissions conclusively establish that there was no equity in the Bayport property at the time they transferred it to wife's LLC.

But, as the district court implicitly concluded, Landmark's admissions do not resolve the controlling issue in this case. As a matter of law, the date of transfer under MUFTA occurred in April 2012, not October 25, 2011. A transfer is made "when the transfer is so far perfected that a good[-]faith purchaser of the asset from the debtor against which applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee." Minn. Stat. § 513.46(1)(i). Here, husband and wife transferred the Bayport property when they recorded the interest of wife's LLC in the property in April 2012, which made her LLC's interest superior to all future good-faith purchasers, such as Landmark. Landmark never admitted that the fair-market value of the Bayport property was less than $1,000,000 in April 2012. Moreover, Landmark's admission that "outstanding indebtedness" secured by the guaranty mortgage exceeds $1,000,000 is not only vague, but also does not conclusively establish that the property was fully mortgaged in April 2012.

A "guaranty" is "a collateral contract to answer for the payment of a debt or the performance of a duty in case of the default of another who is primarily liable to pay or perform the same." *Geneva JPM 2003-PM1, LLC v. Geneva FSCX I, LLC*, 843 N.W.2d 263, 266 (Minn. App. 2014) (quotation omitted). A guaranty is a conditional obligation that does not become absolute until a default on the underlying obligation. *Schmidt v. McKenzie*, 215 Minn. 1, 7, 9 N.W.2d 1, 4 (1943). Minnesota appellate courts have not

8

addressed how to determine the value of an asset securing a guaranty mortgage under Minn. Stat. § 513.41, subd. (2)(i). A guaranty mortgage compensates the lender in the event of a default on the principal mortgage. Once the principal mortgage debt is satisfied, the guaranty ceases to exist. *See State Bank of Young Am. v. Fabel*, 530 N.W.2d 858, 862 (Minn. App. 1995), *review denied* (Minn. June 29, 1995).

The record shows that at the time of the transfer, there was no claim of default upon the principal mortgage or guaranty mortgage. Hence, we agree with the district court that the amount of debt secured by the guaranty mortgage was zero. Moreover, the property had considerable value, as the county assessed its value at $924,000 in 2011 and $919,600 in 2012. We conclude that the Bayport property is an asset under MUFTA. Minn. Stat. § 513.41(2)(i).

We note that there are also strong public-policy grounds for district courts to closely examine the amount of equity of the asset securing a guaranty mortgage in these types of cases. To hide monies from creditors, debtors could easily secure assets with considerable value with sham guaranty mortgages and then falsely claim that the asset was encumbered up to or exceeding its value.

## II. The district court did not err when it held that the husband and wife fraudulently transferred the Bayport property to wife's LLC.

Under MUFTA, debtors are prohibited from transferring an asset "with actual intent to hinder, delay, or defraud any creditor of the debtor." Minn. Stat. § 513.44(a)(1). "[F]raudulent intent must be determined in light of the facts and circumstances of each case." *Finn v. Alliance Bank*, 860 N.W.2d 638, 647-48 (Minn. 2015). A district court may

9

consider factors commonly referred to as "badges of fraud" in determining whether a debtor transferred an asset with an actual intent to defraud a creditor. *Id*. at 647. The list of badges includes: (1) whether the transfer was to an insider; (2) the debtor's possession or control of the property after the transfer; (3) the concealment of the transfer; (4) whether the debtor was threatened with a lawsuit at the time of the transfer; and (5) whether the value of consideration received by the debtor was equivalent to the value of the asset transferred. Minn. Stat. § 513.44(b).

Husband and wife argue that the district court erred in finding that they fraudulently transferred the property because wife's LLC does not meet the statutory definition of "insider" and the property had no value at the time of transfer.

The district court did not clearly err in finding that husband and wife fraudulently transferred the property. The parties' relationship "is a significant consideration" when determining intent to defraud. *New Horizon Enters., Inc. v. Contemporary Closet Design, Inc.*, 570 N.W.2d 12, 16 (Minn. App. 1997). Here, husband and wife conveyed the property to wife's LLC. The statutory definition of "insider" includes spouses. Minn. Stat. § 513.41(7)(i)(A), (9). The definition also contemplates business organizations such as corporations and partnerships as potential insiders. *Id.* (7)(ii), (7)(iii). Also, the definition of "insider" is not limiting. *See Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 2d 55, 62-63 (Minn. 2014) (concluding that the term "insider" is nonexclusive in Minn. Stat. § 513.41(7)(i)(A) and that former spouse was an insider). Taking these facts together, the single-member LLC owned and directed by wife constitutes an "insider."

The transfer also violated the anti-alienation clause of the guaranty mortgage, which prohibited a transfer of the property to a third party without Central Bank's consent. There is no evidence in the record that Central Bank ever authorized the transfer. Landmark was actively seeking a $403,524.42 judgment against husband at the time husband and wife transferred the property. Further, wife's LLC did not pay adequate consideration to wife and husband for the conveyance of the property to the LLC.

## D E C I S I O N

The Bayport property is an asset under MUFTA because, at the time of transfer, there was no claim of default on the principal or guaranty mortgage and the property had value. Husband and wife transferred the property with the intent to defraud respondent-creditor.

**Affirmed**.