**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFT BANK, FRANKFURT AM MAIN,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>LOUIS PHILLIPUS MEYER; LYNN MEYER,<br><br>Defendants-Appellees. | No. 15-35086<br><br>D.C. No. 2:14-cv-00869-JLR<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted May 19, 2017
Seattle, Washington

Before: HAWKINS, GOULD, and PAEZ, Circuit Judges.

Appellant DZ Bank AG Deutsche Zentral-Genossenschaftsbank ("DZ

Bank") appeals from a district court order affirming the bankruptcy court's

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

judgment in favor of Appellees Louis and Lynn Meyer ("the Meyers").[1] We have

jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

Prior to defaulting on a $1,728,834.65 promissory note held by DZ Bank

and their personal guarantee of the note, the Meyers executed an elaborate series of

transfers and sales to place their assets beyond the reach of their creditors.

Notably, in October 2008, Louis Meyer caused his insurance company to transfer

assets valued at $123,200 to Meyer Insurance ("MI"), a corporation in which he

owned 100% of the shares. This transfer increased MI's assets to $385,000, which

was later transferred for no consideration to another corporation under Meyer's

control. That corporation, Insurance Choices 4 U ("IC4U"), agreed to pay the

$385,000 back to Meyer, personally, over time. Eventually, the Meyers defaulted

and filed for bankruptcy.

In bankruptcy court, DZ Bank filed an adversary action against the Meyers

alleging that the $385,000 transferred out of MI was a fraudulent transfer under the

Washington Uniform Fraudulent Transfer Act ("WUFTA") and therefore

non-dischargeable under 11 U.S.C. § 523. *See Husky Int'l Elecs., Inc. v. Ritz*, 136

S. Ct. 1581 (2016). Section 523 exempts debts for money obtained by "actual

[1] At oral argument, Appellees' counsel represented to the court that the Meyers are no longer married. For the sake of convenience, however, we continue to refer to Appellees as "the Meyers."

2

fraud," *see* 11 U.S.C. § 523(a)(2)(A), while WUFTA makes any transfer made by a debtor "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" an actual fraud, *see* Wash. Rev. Code § 19.40.041(a)(1). WUFTA defines a transfer as "every mode, direct or indirect" of disposing of an asset, Wash. Rev. Code § 19.40.011(12), which, in turn, is defined as the "property of the debtor," *id*. § 19.40.011(2)(i). The statute defines "property" as "anything that may be the subject of ownership." *Id*. § 19.40.011(10).

Although the bankruptcy court ruled in favor of DZ Bank on its fraudulent transfer claim, it ultimately limited the judgment to $123,200, which was the portion of the $385,000 that was traceable to DZ Bank's security interest in the assets. The district court affirmed, albeit on a slightly different ground. The court reasoned that DZ Bank could only recover assets that were the "property of the debtor[s]"—i.e., legally titled in the Meyers' name. Since the assets were legally titled in MI's name, WUFTA did not apply. For WUFTA to apply, DZ Bank was required to obtain a ruling that MI was the alter ego of the Meyers, which it failed to do. On the facts of this case, we disagree with both courts.

The Washington Supreme Court has explained that "the overriding purpose of the UFTA is to provide relief for creditors whose collection on a debt is frustrated by the actions of a debtor to place the putatively satisfying assets beyond

3

the reach of the creditor." *Thompson v. Hanson*, 219 P.3d 659, 665, *as amended* (Mar. 26, 2010), *republished as modified at* 239 P.3d 537 (Wash. 2009) (en banc); *see also Husky Int'l*, 136 S. Ct. at 1586–88 (discussing the history of "actual fraud"). This "overriding purpose," *Hanson*, 219 P.3d at 655, can be traced to "the beginning of English bankruptcy practice," *Husky Int'l*, 136 S. Ct. at 1587. Since then, "courts and legislatures have used the term 'fraud' to describe a debtor's transfer of assets that . . . impairs a creditor's ability to collect the debt." *Id.*

With WUFTA's purpose in mind, we look to what other courts have concluded when faced with a similar question under the UFTA. *Thompson v. Hanson*, 174 P.3d 120, 126 (Wash. Ct. App. 2007) ("Because an explicit purpose of the UFTA is uniformity among the States that have adopted it, the interpretation of other courts also provides guidance."), *aff'd*, 239 P.3d 537 (Wash. 2009) (en banc); *see also* Wash. Rev. Code § 19.40.903 ("[WUFTA] shall be applied and construed to effectuate its general purpose to make uniform the law . . . among states enacting it."). In *Wiand v. Lee*, for example, the defendants argued that "transfers of funds from the receivership entities could not have been transfers of 'assets' because assets under FUFTA[, Florida's statute identical to WUFTA,] must be [the] 'property of a debtor,' and the funds . . . transferred were property of the corporations." 753 F.3d 1194, 1203 (11th Cir. 2014). The Eleventh Circuit

rejected that argument, explaining that the FUFTA did not require the debtors, themselves, to have legal title to the assets transferred. Florida law required only that the assets "could have been applicable to the payment of the debt due." *Id.*

A Minnesota court interpreting Minnesota's identical version of WUFTA in *Reilly v. Antonello* rejected a corporate officer's argument that it was the corporation, not the officer, that legally diluted the corporation's shares and thereby reduced his ownership from 100% to 2%. 852 N.W.2d 694, 701 (Minn. App. Ct. 2014). The court refused to "ignore[] the reality that [the officer] was exclusively responsible for the actions of the corporation and that he fraudulently transferred assets to the detriment of his creditors." *Id.* The court reasoned that "[t]o allow a sole director, officer, and shareholder to mask his fraudulent actions behind the facade of a closely held corporation would defy the plain meaning and intent of the Minnesota Uniform Fraudulent Transfer Act." *Id.*

In *In re Nickeson*, a South Dakota bankruptcy court interpreting that state's version of UFTA, which is identical to WUFTA, held similarly. Bankr. No. 13-10137, Adversary No. 14-1004, 2014 WL 6686524, at *11 (Bankr. D.S.D. Nov. 25, 2014). A sole shareholder and director of a farming corporation caused the corporation to dilute its shares, reducing the shareholder's ownership from 100% to 20%. *Id.* Refusing to "reward . . . [the] pervasive disregard for corporate

5

formalities," the court rejected the shareholder's argument that it was the corporation that diluted its own shares. *Id.*

If MI had retained the $385,000 in assets, DZ Bank would have been able to enforce any judgment against the Meyers, prior to their filing for bankruptcy protection, by executing against Louis Meyer's 100% ownership interest in MI to satisfy $385,000 of its claim. Wash. Rev. Code § 6.17.090 ("All property, real and personal, of the judgment debtor that is not exempted by law is liable to execution."). When Meyer indirectly transferred all of MI's assets to another corporation, he, as in *Wiand*, *Antonello*, and *Nickeson*, depleted the value of his assets to the detriment of his creditors. His shares in MI became worthless as a result of his actions as MI's sole owner and shareholder, while, even after filing for bankruptcy, he continued to receive payments from IC4U. Like other courts, we find this is sufficient to constitute "actual fraud" for the purposes of WUFTA and § 523(a)(2)(A). The amount of the non-dischargeable debt resulting from Meyer's fraudulent transfer is $385,000, which DZ Bank is entitled to recover.

**REVERSED and REMANDED**.