**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DZ BANK AG DEUTSCHE ZENTRAL-GENOSSENSCHAFT BANK, FRANKFURT AM MAIN, New York Branch, *Plaintiff-Appellant*, v. LOUIS PHILLIPUS MEYER; LYNN MEYER, *Defendants-Appellees*. | No. 15-35086 D.C. No. 2:14-cv-00869-JLR OPINION |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, Senior District Judge, Presiding

Argued and Submitted May 19, 2017
Seattle, Washington

Filed August 24, 2017

Before: Michael Daly Hawkins, Ronald M. Gould,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

# SUMMARY[*]

## Bankruptcy

The panel reversed the district court's decision affirming the bankruptcy court's judgment in favor of a creditor in the creditor's adversary proceeding alleging that the debtors fraudulently transferred assets in order to place the assets out of the creditor's reach, and that the debt therefore was non-dischargeable under 11 U.S.C. § 523(a).

The panel held that the bankruptcy court correctly found that, under the Washington Uniform Fraudulent Transfer Act, the debtors engaged in fraudulent transfers and, therefore, actual fraud, to the creditor's detriment. The bankruptcy court erred, however, in limiting relief to the value of the assets that were directly traceable to the creditor's security interest. The panel held that the non-dischargeable debt resulting from the fraudulent transfers was the full amount that the creditor would have recovered if it had been able to execute against the debtor's ownership interest in the closely-held corporation from which the debtor transferred the assets.

# COUNSEL

D. Alexander Darcy (argued) and Michael W. Debre III, Askounis & Darcy PC, Chicago, Illinois, for Plaintiff-Appellant.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Marc S. Stern (argued), Seattle, Washington; for Defendants-Appellees.

## OPINION

PAEZ, Circuit Judge:

This case arises from a dispute between DZ Bank AG Deutsche Zentral-Genossenschaftsbank ("DZ Bank"), as creditor, and Louis and Lynn Meyer ("the Meyers"),[1] as debtors. DZ Bank filed an adversary action against the Meyers in bankruptcy court, alleging that the Meyers had fraudulently transferred assets in order to place them out of the bank's reach. The bankruptcy court agreed, but limited the judgment to the value of the assets that were directly traceable to DZ Bank's security interest. The district court affirmed, reasoning that DZ Bank could not recover the value of the other assets because those assets were not the property of the Meyers, but rather, were the property of Louis Meyer's closely-held corporation. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## I.

In January 2008, Louis Meyer was the sole member and

---

[1] At oral argument, Appellees' counsel represented to the court that the Meyers are no longer married. For the sake of convenience, however, we continue to refer to Appellees as "the Meyers."

manager of Choice Cash Advance LLC ("Choice").[2]  Choice purchased five insurance agencies and their books of business in a sale arranged by Brooke Credit Corporation and its associated entities (collectively, "Brooke").  As part of the purchase, Brooke loaned Choice $1,771,715.20.  The loan itself was financed pursuant to a credit and security agreement that Brooke entered into with a third-party entity, whose agent was DZ Bank. Under the terms of that agreement, Brooke granted DZ Bank a security interest in, among other things, its right, title, and interest to the Choice loan.  Choice executed a promissory note for the $1.7 million and gave Brooke a blanket security interest in all of its assets, including intangibles.  The Meyers personally guaranteed the note, as well.

In October 2008, Brooke defaulted on its obligations under the agreement with DZ Bank, and multiple Brooke entities filed for bankruptcy.  Then, DZ Bank and Brooke entered into an agreement to transfer Choice's note and the Meyers' personal guarantee to DZ Bank.  Choice formally acknowledged the assignment and agreed to pay the $1,728,834.65 balance that remained on the promissory note to DZ Bank.  Over the next two years, however, Choice and DZ Bank entered into several forbearance agreements after Louis Meyer, on behalf of Choice, repeatedly requested loan modifications.

During the same time period, the Meyers executed an elaborate series of transfers and sales in an effort to place their assets beyond the reach of their creditors.  In October

---

[2] We take this factual background from the bankruptcy court's amended findings of fact and conclusions of law, following trial of DZ Bank's adversary action.

2008, Louis Meyer caused Choice to transfer assets valued at $123,200 to Meyer Insurance ("MI"), a closely-held corporation in which he owned 100% of the shares.

In 2010, Louis Meyer purchased Insurance Choices 4 U, Inc. ("IC4U") for $200 from a family friend. The Meyers also set up the Meyer Irrevocable Trust, presumably for estate-planning purposes. Their daughter was designated as trustee, and they were listed as beneficiaries. In December 2010, Louis Meyer caused MI to transfer its assets to IC4U for no consideration, and then arranged for the Meyer Trust to purchase 100% of IC4U's stock. At that time, MI's assets had a fair market value of $385,000 of which $123,200 was attributable to the assets originally transferred from Choice. IC4U agreed to pay $385,000 back to Louis Meyer, personally, over time. There was testimony that this agreement was to repay him for a shareholder loan, but the bankruptcy court found that "[t]here was no evidence at trial . . . of any underlying loan documents or any accounting for that loan."

In January 2011, IC4U transferred its assets to Connect Insurance Agency, Inc. ("Connect") in exchange for paying IC4U all commissions Connect received from the transferred insurance policies for nine months. Together, these transfers left Choice, MI, and IC4U all insolvent. And within a few months, Choice and the Meyers had defaulted on the note and their personal guarantee.

In August 2011, DZ Bank filed an action against Choice and the Meyers. After the complaint was filed, the Meyers filed for bankruptcy. As a result, the district court stayed DZ Bank's action against the Meyers. But the district court permitted proceedings to go forward against Choice,

eventually entering a final judgment of $1,710,469.93 in favor of DZ Bank in March 2013. As Choice was insolvent, however, DZ Bank could not collect on the judgment.

As a result, DZ Bank filed an adversary action against the Meyers in bankruptcy court alleging that the transfer of assets out of MI was a fraudulent transfer under the Washington Uniform Fraudulent Transfer Act ("WUFTA"),[3] *see* Wash. Rev. Code § 19.40.041, and therefore non-dischargeable under 11 U.S.C. § 523(a). *See Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016). Among other exceptions from dischargeability, § 523(a) excepts debts obtained by "actual fraud." *See* 11 U.S.C. § 523(a)(2)(A). As the Supreme Court has recently explained, the term "'actual fraud' is broad enough to incorporate a fraudulent conveyance." *Husky*, 136 S. Ct. at 1587.

In Washington, under WUFTA, a conveyance is fraudulent when made by a debtor "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." *See* Wash. Rev. Code § 19.40.041(a)(1). WUFTA defines a transfer as "every mode, direct or indirect" of disposing of an asset, *id*. § 19.40.011(12), which, in turn, is defined as the "property of a debtor," *id*. § 19.40.011(2). The statute defines "property" as "anything that may be the subject of ownership." *Id*. § 19.40.011(10).

---

[3] In April 2017, the Washington state legislature passed a bill amending WUFTA and renaming it the Washington Uniform Voidable Transactions Act ("WUVTA"). *See* S.B. 5085, 65th Leg., Reg. Sess. (Wash. 2017). Although WUVTA took effect on July 23, 2017, we continue to refer to the WUFTA version of the statute in this opinion, as it is the law that governs the subject transactions. *See id.* ("[WUVTA] does not apply to a transfer made or obligation incurred before the effective date . . . .").

Although the bankruptcy court ruled in favor of DZ Bank on its fraudulent transfer claim, it ultimately limited the judgment to $123,200, which was the portion of the $385,000 that was traceable to DZ Bank's security interest in the assets. DZ Bank appealed, arguing that the bankruptcy court erroneously limited the amount of its non-dischargeable debt. But the district court affirmed the bankruptcy court's determination that DZ Bank could not maintain a fraudulent transfer claim as to MI's "non-collateral assets," albeit on a slightly different ground. The court reasoned that DZ Bank could only recover assets that were the "property of [the] debtor[s]," *see id*. § 19.40.011(2)—i.e., legally titled in the Meyers' name. Since the assets were legally titled in MI's name, WUFTA did not apply. For WUFTA to apply, DZ Bank was required to obtain a ruling that MI was the alter ego of the Meyers, which it failed to do. On the facts of this case, we disagree with both courts.

## II.

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Kimura*, 969 F.2d 806, 810 (9th Cir. 1992). As the issue presented is purely legal, our review is de novo.

## III.

### A.

The Washington Supreme Court has explained that "the overriding purpose of the UFTA is to provide relief for creditors whose collection on a debt is frustrated by the actions of a debtor to place the putatively satisfying assets beyond the reach of the creditor." *Thompson v. Hanson*,

219 P.3d 659, 665, *as amended* (Mar. 26, 2010), *republished as modified at* 239 P.3d 537 (Wash. 2009); *see also Husky*, 136 S. Ct. at 1586–88 (discussing the history of "actual fraud"). This "overriding purpose," *Hanson*, 219 P.3d at 665, can be traced to "the beginning of English bankruptcy practice," *Husky*, 136 S. Ct. at 1587. Since then, "courts and legislatures have used the term 'fraud' to describe a debtor's transfer of assets that . . . impairs a creditor's ability to collect the debt." *Id*.

### B.

With WUFTA's purpose in mind, we look to what other courts have concluded when faced with similar circumstances under the UFTA. *Thompson v. Hanson*, 174 P.3d 120, 126 (Wash. Ct. App. 2007) ("Because an explicit purpose of the UFTA is uniformity among the States that have adopted it, the interpretation of other courts also provides guidance."), *aff'd*, 239 P.3d 537 (Wash. 2009); *see also* Wash. Rev. Code § 19.40.903 ("[WUFTA] shall be applied and construed to effectuate its general purpose to make uniform the law . . . among states enacting it."). In *Wiand v. Lee*, for example, the defendants argued that "transfers of funds from the receivership entities could not have been transfers of 'assets' because assets under FUFTA[, Florida's statute identical to WUFTA,] must be [the] 'property of a debtor,' and the funds . . . transferred were property of the corporations." 753 F.3d 1194, 1203 (11th Cir. 2014) (quoting Fla. Stat. § 726.102(2), (12)). The Eleventh Circuit rejected that argument, explaining that FUFTA did not require the debtors, themselves, to have legal title to the assets transferred. Florida law required only that the assets "could have been applicable to the payment of the debt due." *Id.* (emphasis

removed) (quoting *Nationsbank, N.A. v. Coastal Utils., Inc.*, 814 So.2d 1227, 1229 (Fla. 4th Dist. Ct. App. 2002)).

A Minnesota court interpreting Minnesota's identical version of WUFTA in *Reilly v. Antonello* rejected a corporate officer's argument that it was the corporation, not the officer, that legally diluted the corporation's shares and thereby reduced the officer's ownership from 100% to 2%. 852 N.W.2d 694, 701 (Minn. Ct. App. 2014). The court refused to "ignore[] the reality that [the officer] was exclusively responsible for the actions of the corporation and that he fraudulently transferred assets to the detriment of his creditors." *Id.* The court reasoned that "[t]o allow a sole director, officer, and shareholder to mask his fraudulent actions behind the facade of a closely held corporation would defy the plain meaning and intent of the Minnesota Uniform Fraudulent Transfer Act." *Id.*

In *In re Nickeson*, a South Dakota bankruptcy court interpreting that state's version of UFTA, which is also identical to WUFTA, held similarly. *See* Bankr. No. 13-10137, Adversary No. 14-1004, 2014 WL 6686524, at *11 (Bankr. D.S.D. Nov. 25, 2014). There, a sole shareholder and director of a farming corporation caused the corporation to dilute its shares, reducing the shareholder's ownership from 100% to 20%. *Id.* Refusing to "reward . . . [the] pervasive disregard for corporate formalities," the court rejected the shareholder's argument that it was the corporation that diluted its own shares. *Id.*

These cases are instructive. If MI had retained the $385,000 in assets, DZ Bank would have been able to enforce any judgment against the Meyers, prior to their filing for bankruptcy protection, by executing against Louis Meyer's

100% ownership interest in MI to satisfy $385,000 of its claim. *See* Wash. Rev. Code § 6.17.090 ("All property, real and personal, of the judgment debtor that is not exempted by law is liable to execution."). When Louis Meyer indirectly transferred all of MI's assets to another corporation, he, as in *Wiand*, *Antonello*, and *Nickeson*, depleted the value of his assets to the detriment of his creditors. His shares in MI became worthless as a result of his actions as MI's sole owner and shareholder, while, even after filing for bankruptcy, he continued to receive payments from IC4U. In other words, he prevented DZ Bank from collecting $385,000 of the debt he owed.

Although the bankruptcy court correctly found that the Meyers engaged in fraudulent transfers and, therefore, actual fraud, to DZ Bank's detriment, the court limited relief to $123,200—the amount of the collateralized debt. This was error. The bankruptcy court should have granted relief for the full $385,000 that DZ Bank would have recovered if it had been able to execute against Louis Meyer's ownership interest in MI. *See* 4 Collier on Bankruptcy ¶ 523.08[2] (16th ed. 2016) ("[A] nondischargeability claim based on a[] scheme in which a debtor fraudulently transfers assets of one closely held corporation to other closely held companies, purposefully intended to hinder, delay, or defeat the collection of a debt, constitutes actual fraud under section 523(a)(2)(A)."). The amount of the non-dischargeable debt resulting from the fraudulent transfers is therefore $385,000, which DZ Bank is entitled to recover.

**REVERSED** and **REMANDED**.